The PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI, Respondent,

v.

Scott TAVEAU, Appellant.

No. WD 71213.

Missouri Court of Appeals, Western District.

March 23, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2010.

Application for Transfer Denied Aug. 31, 2010.

Roger G. Brown and Kent L. Brown Jefferson City, MO, for Appellant.

Allen D. Allred and Lawrence C. Friedman, St. Louis, MO, for Respondent.

Before Division III: KAREN KING MITCHELL, Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

Scott Taveau (Taveau) appeals the Circuit Court of Cole County's (trial court) grant of summary judgment in favor of The Public School Retirement System of Missouri (PSRS) on its declaratory judgment petition. In PSRS's petition, it sought a declaration that Taveau was not entitled to retirement benefits because he had not actually retired or had otherwise violated section 169.560.[1] On appeal, Taveau raises three points. We reverse and remand for trial.

### Background Facts and Procedural History

On June 7, 2004, Taveau entered into an employment agreement with Liberty Public School District (LPSD) to serve as LPSD's superintendent for three years. In 2005, Taveau expressed his desire to retire from his position on December 31, 2005, and to work part-time as LPSD's superintendent. In late 2005, Taveau filled out his application with the retirement system. On January 1, 2006, Taveau began receiving retirement benefits pursuant to section 169.560, which authorizes

---

1. All statutory references are to RSMo Cum. Supp.2005, unless otherwise indicated.

part-time school district employees that are otherwise retired and receiving retirement benefits pursuant to sections 169.010 through 169.141 to maintain part-time employment with the school district and receive retirement benefits, as long as the employee does not exceed 550 hours of school district employment per school year or make more than 50% of the annual compensation for the position filled by the part-time employee.

In August 2006, PSRS filed a declaratory judgment petition in which it alleged that Taveau was not entitled to retirement benefits because he never retired from his position as superintendent of LPSD. In the alternative, PSRS sought a declaration that Taveau had violated the requirements of section 169.560 by working more than 550 hours and making more than 50% of the compensation for the position he filled.

On January 26, 2009, PSRS filed its motion for summary judgment. Taveau countered with a separate motion for summary judgment. On February 11, 2009, the trial court entered an order informing the parties that it had considered the motions for summary judgment and directing the parties to present evidence on the motions. Pursuant to this order, the trial court held a two-day evidentiary hearing on February 19–20, 2009. At the hearing, the parties called four witnesses to the stand. On May 21, 2009, the trial court entered summary judgment for PSRS on its motion. In the trial court's judgment, it ordered Taveau to reimburse PSRS for retirement benefits that it had previously paid him because, as the trial court concluded, the undisputed evidence established that (1) Taveau did not retire; (2) even if he did retire, he worked more than 550 hours; and (3) he exceeded the 50% compensation limit. This appeal follows.

**Standard of Review**

Our review of the trial court's grant of summary judgment is *de novo:*

The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*State ex rel. Nixon v. Hughes,* 281 S.W.3d 902, 906 (Mo.App. W.D.2009) (quoting *State ex rel. Nixon v. Watson,* 204 S.W.3d 716, 718 (Mo.App. W.D.2006)). In reviewing the trial court's grant of summary judgment, we review the record in the light most favorable to the party against whom the trial court entered judgment against. *Id.* We afford that party the benefit of all reasonable inferences. *Id.*

To be entitled to summary judgment, the moving party must show that: (1) there is no genuine dispute as to the material facts on which the party relies for summary judgment; and (2) based on those facts, the party is entitled to judgment as a matter of law. *Id.* (citing Rule 74.04(c)(6)). The right to judgment as a matter of law differs depending on whether the moving party is the claimant or defending party. *Id.*

In this case, PSRS moved for summary judgment on its declaratory judgment petition. Thus, in this case, the moving party was the claimant. For a claimant to be entitled to summary judgment, the claimant must establish that there is no genuine dispute between the parties as to the material facts upon which the claimant would have had the burden of persuasion at trial. *Watson,* 204 S.W.3d at 719. The claimant

must allege undisputed facts establishing every element of his claim. *Id.*

**Background of the Role of PSRS in Administering Pension Benefits and Seeking Reimbursement from Taveau**

PSRS governs the pension plan established for teachers and other employees who worked in public school districts with a population under 400,000. § 169.020; *see also Savannah R–III Sch. Dist. v. Pub. Sch. Ret. Sys. of Mo.,* 950 S.W.2d 854, 856 (Mo. banc 1997). Sections 169.010 through 169.141 govern the plan. *See also Savannah R–III School Dist.,* 950 S.W.2d at 856. PSRS's pension plan is funded solely through employer and employee contributions. § 169.030.1 RSMo Cum.Supp. (2003); *see also Savannah R–III Sch. Dist.,* 950 S.W.2d at 856. Upon retirement, the person may choose from various formulas to determine the amount of their monthly allowance. § 169.070; *id.* Thus, a prerequisite for a person to receive retirement benefits is that person's actual retirement from the public school system.

Section 169.560 provides a minor exception to this rule by allowing a retiree to maintain part-time employment with the public school system and receive retirement benefits. Section 169.560 allows the retiree to do so as long as that retiree works no more than 550 hours and is paid no more than 50% of the annual compensation for the position filled:

> Any person retired and currently receiving a retirement allowance pursuant to sections 169.010 to 169.141, other than for disability, may be employed in any capacity in a district included in the retirement system created by those sections on either a part-time or temporary-substitute basis not to exceed a total of five hundred fifty hours in any one school year, and through such employ-ment may earn up to fifty percent of the annual compensation payable under the employing district's salary schedule for the position or positions filled by the retiree, given such person's level of experience and education, without a discontinuance of the person's retirement allowance. . . . If such a person is employed in any capacity by such a district on a regular, full-time basis, the person shall not be eligible to receive the person's retirement allowance for any month during which the person is so employed and shall contribute to the retirement system.

Pursuant to section 169.560, then, to maintain part-time employment and receive retirement benefits, the person must, in fact, retire from full-time employment. Under the statute, there is no necessity to examine the number of hours worked by the retiree nor the amount of compensation received by the retiree unless the retiree does, in fact, retire from full-time employment. Even if the retiree has retired from full-time employment, the statute further requires that retiree (1) work no more than 550 hours, and (2) make no more than 50% of the salary at that position. Based on section 169.560, PSRS filed a declaratory judgment petition in which it alleged that Taveau was required to reimburse it for retirement benefits it paid to him from January 1, 2006, through June 30, 2007, because PSRS claimed that (1) Taveau did not actually retire on December 31, 2005; (2) even if he did retire, he worked more than 550 hours as a "part-time" superintendent; and (3) he exceeded 50% of the compensation for that position. In its motion for summary judgment, PSRS moved for summary judgment on all three issues.

**Rules 74.04 and 55.28—Oral Testimony at a Summary Judgment Hearing**

In making its case for summary judg-

ment, Rule 74.04(c)(1)[2] required PSRS to make specific references to the pleadings, discovery, exhibits and affidavits to support its claim:

A statement of uncontroverted material facts shall be attached to the motion. The statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the *pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts.*

Attached to the statement shall be a copy of all discovery, exhibits or affidavits on which the motion relies.

Rule 74.04 requires the movant to set forth a specific basis for summary judgment and list specific references to the record to support the basis for summary judgment so the opposing party, the trial court, and the appellate court are apprised of the movant's claim of entitlement to summary judgment. *Hughes,* 281 S.W.3d at 908. "Because the underlying purpose of Rule 74.04 is directed toward helping the court expedite the disposition of [the] case, compliance with the rule is mandatory." *Id.* In this case, the record shows that the trial court also held a two-day evidentiary hearing on the motion for summary judgment where the parties examined numerous witnesses. Thus, in reviewing the trial court's grant of summary judgment, our preliminary issue is whether or not PSRS could rely on the witnesses' testimony to support its motion for summary judgment.

In that regard, some federal courts have held a trial court can take oral testimony at a summary judgment hearing. *See Seamons v. Snow,* 206 F.3d 1021, 1025–26 (10th Cir.2000); *Stewart v. RCA Corp.,* 790 F.2d 624, 628–29 (7th Cir.1986); *Walters v. City of Ocean Springs,* 626 F.2d 1317, 1322 (5th Cir.1980). These courts allow the trial court to take oral testimony during a summary judgment hearing because of the language of Federal Rule of Civil Procedure 43(c),[3] which states that "[w]hen a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions." These courts have ruled that Rule 43(c)'s use of the word "motion" is general enough to cover a summary judgment motion:

Although Rule 43(e) does not say expressly that the judge may take evidence in open court in order to pass on a motion for summary judgment, and although Rule 56(c) suggests that the decision should be made on affidavits and documentary evidence, several courts have held that because Rule 43(e) mentions "motions" in general it covers motions for summary judgment in particular. E.g., *Walters v. City of Ocean Springs,* 626 F.2d 1317, 1321 (5th Cir. 1980); *Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023, 1029 (6th Cir. 1968), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1468, 22 L.Ed.2d 763 (1969).

*Stewart,* 790 F.2d at 628.

These courts, however, have also cautioned that the use of oral testimony at a

---

**2.** All rule references are to Missouri Rules of Civil Procedure 2009, unless otherwise indicated.

**3.** Prior to December 1, 2007, Rule 43(c) of the Federal Rules of Civil Procedure was formerly found at subsection 43(e) and read as follows: "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." Because the wording has not changed the substance of the rule, case precedent interpreting the earlier version of the rule is applicable to our discussion today.

summary judgment hearing should be extremely rare:

> Yet oral testimony also could waste a lot of everyone's time. Because the judge may not evaluate the credibility of the witnesses, the principal advantage of oral testimony is unavailable in hearings under Rule 43(e) on motions for summary judgment. If there is no disputed issue, a few affidavits should show that. Mammoth cases have ended in summary judgment, e.g., *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); limited oral exchanges may focus the disputes and send them on their way. In the run of things, however, oral testimony under Rule 43(e) will be redundant. Because the judge may not resolve evidentiary disputes, he will do the same thing after hearing the testimony he should have done after reading the affidavits; if the judge denies the motion the same witnesses will need to reappear for the trial, and if he grants the motion the witnesses did not need to appear at all. Either way the witnesses appear too many times. The litigants, their counsel, the witnesses, and the judge all will be the worse for the experience. One trial per case is enough. Rule 43(e) hearings on motions for summary judgment therefore should be rare.

*Id.* at 629; *see also Seamons*, 206 F.3d at 1026 ("We agree with those courts that have suggested oral testimony on summary judgment motions should be used sparingly and with great care"); *Thompson v. Mahre*, 110 F.3d 716, 720 (9th Cir. 1997) ("Oral testimony cannot, under Federal Rule of Civil Procedure 56, lead to a finding on a genuinely disputed fact, but only a determination as to which facts are not genuinely disputed. That is probably why the taking of oral testimony on sum-

mary judgment is so rare—it would ordinarily be a waste of time.")

Rule 55.28, which is similar to Rule 43 of the Federal Rules of Civil Procedure, states that "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions." The committee notes on Rule 55.28 state that Rule 55.28 "is the same as Rule 43(e) of the Federal Rules of Civil Procedure." *See also Landoll ex rel. Landoll v. Dovell*, 779 S.W.2d 621, 628 (Mo.App. E.D. 1989). And, in fact, like its federal counterpart, Rule 55.28 does allow the court to hear a motion on oral testimony. And, like its federal counterpart, the use of the term "motion" in Rule 55.28 is general and the rule does not specifically exclude summary judgment motions from its scope. Thus, one could argue that, based upon federal precedent interpreting the federal counterpart to Rule 55.28, a party may rely upon oral testimony at a summary judgment hearing to establish its case for summary judgment.

We, however, believe that Rule 55.28 is inapplicable to a summary judgment motion. The rule conditions the trial court's use of oral testimony to decide only motions that are "based on facts not appearing of record." Thus, for the trial court to take oral testimony on a motion, the motion must be a motion that relies on facts **outside** of the record.

■ In that regard, well-established law states that, pursuant to Rule 74.04(c)(1), a summary judgment motion can rely only on facts based **in** the record. In fact, the rule requires the motion to make specific references to the pleadings, discovery, exhibits, or affidavits that demonstrate the lack of a genuine issue. Rule 74.04(c)(1). And, the trial court can grant summary

judgment to a party only on the basis of the parties' summary judgment motions. *Creviston v. Aspen Prods., Inc.*, 168 S.W.3d 700, 707 (Mo.App. S.D.2005); *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo.App. E.D.1999) ("The trial court grants or denies motions for summary judgment on the basis of what is contained in the motions for summary judgment and the responses thereto."). The trial court violates Rule 74.04 when it enters summary judgment based on matters outside of the parties' summary judgment record. *Creviston*, 168 S.W.3d at 707. Thus, since a movant's summary judgment motion cannot be based on facts outside the record, it would appear to us that Rule 55.28 is inapplicable and the trial court should not have heard oral testimony on the motions.

Having said the above, in *Landoll*, the Eastern District of this court has interpreted Rule 55.28 to permit trial courts to hear oral testimony on a motion for summary judgment. 779 S.W.2d at 628. While such an interpretation ignores Rule 55.28's condition that the trial court can hear oral testimony only on a motion that is "based on facts not appearing of record," we stop short of refusing to follow *Landoll* since we find that, even if we consider the testimony at the hearing, the trial court erred in granting summary judgment for PSRS. We do, however, echo the sentiment of numerous appellate courts within the federal system suggesting that the taking of oral testimony on a

motion for summary judgment is, arguably, a waste of judicial resources and financial resources of the parties. Since a trial court is not entitled to judge the credibility of witnesses for purposes of ruling on a motion for summary judgment, the only real advantage of oral testimony is not available to the trial court in a Rule 55.28 hearing.[4] Thus, we question why the trial court compelled the parties below to participate in a two-day evidentiary hearing on motions for summary judgment, at great expense to the parties, when if there is no dispute to the material facts, a few affidavits ought to demonstrate that. Our ruling today demonstrates the problem with trial courts attempting to entertain issues of evidentiary credibility at the stage of ruling upon a motion for summary judgment.

### The Issue of Taveau's Retirement

In his first point on appeal, Taveau claims that the trial court erred in granting summary judgment for PSRS on the grounds that Taveau did not qualify for retirement benefits since he did not retire on December 31, 2005. Taveau argues that he complied with Rule 74.04(c) and presented the trial court with a conflicting version of the facts, supported with competent evidence, which if believed, established that he retired on December 31, 2005.

PSRS contends that it presented substantiated facts that Taveau never retired

---

**4.** Throughout the 32–page document that the trial court denominated as its *Findings of Fact, Conclusions of Law, Order and Judgment*, the document contains numerous references to "claims" and "characterizations" by Taveau that are contrary to the trial court's findings of fact. The trial court refers to Taveau's conflicting evidence with words such as "purported," "inaccurate," "incomplete," and "self-serving." These words and phrases are those used to describe the *credi-*

*bility* of factual disputes, not the *existence* of factual disputes. While the trial court may believe that Taveau is the least credible witness possible, he is the non-movant on the subject motion for summary judgment, and as such, he is entitled to a review of the record in the light most *favorable* to him at this stage of the proceedings below. Clearly, he did not receive such a review of the evidence by the trial court.

on December 31, 2005. In its motion, PSRS presented substantiated facts which, if believed, would establish that Taveau did not retire on December 31, 2005. These facts included: (1) Taveau's employment contract required him to work through June 30, 2007; (2) Taveau had the same duties from July 1, 1999, through June 30, 2007; (3) Taveau was the only superintendent of the school district from January 1, 2006, through June 30, 2007; (4) the school district's guidelines and the normal practice at the school district for an employee to resign was for the employee to submit a resignation letter; (5) Taveau did not provide a resignation letter to the school district's chief financial officer or the assistant superintendent; (6) the normal practice at the school district for employees under long-term employment contracts required the school board to approve the resignation; (7) if the board accepted a resignation, then the school board's acceptance would be recorded in the minutes of the board's meeting; (8) there is no reference in any school board meeting minutes indicating that Taveau resigned on December 31, 2005; (9) during the same period, there are references to the board accepting other resignations; (10) the school district never issued a public announcement or news release stating that Taveau was retiring; (11) Taveau did not inform his secretary that he was retiring on December 31, 2005; and (12) witnesses observed Taveau working on a full-time basis after December 31, 2005. Consistent with its obligation under Rule 74.04, PSRS made specific references to the record to support each of these facts. *Hughes*, 281 S.W.3d at 908. Furthermore, at the trial court's hearing on the summary judgment motion, PSRS presented testimony that was consistent with these facts. We agree with PSRS and the trial court that these facts, supported by competent evidence, imply that Taveau did not resign on December 31, 2005. Thus, PSRS made a *prima facie* case for summary judgment under the argument that Taveau did not, in fact, ever retire.

Because PSRS made a *prima facie* case for summary judgment, the only way for Taveau to avoid summary judgment was to place in genuine dispute one or more of the material facts on which PSRS relied. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). A party can place an issue in genuine dispute by showing that the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. "[I]f the movant requires an inference to establish his right to judgment as a matter of law, and the [summary judgment record] reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists...." *Id.* To put a fact in genuine dispute and defeat the movant's *prima facie* case for summary judgment, the non-movant must make more than a general denial. Rule 74.04(c)(2). Rather, to place the facts in genuine dispute, the non-movant is required to make "specific references to the discovery, exhibits or affidavits that demonstrate the specific facts showing that there is a genuine issue for trial." *Id.*

Taveau attempted to defeat PSRS's *prima facie* case for summary judgment by directly disputing the facts that PSRS averred and by itemizing additional material facts supporting Taveau's argument as to the undisputed facts. In both instances, with citations to the record, Taveau disputed PSRS's claim that Taveau did not retire on December 31, 2005. For example, in response to PSRS's contention that Taveau had the same duties from July 1, 1999, through June 30, 2007, Taveau presented

arguments supported by citations to the record that PSRS's evidentiary source for this assertion did not, in fact, actually support PSRS's allegation. Taveau further pointed to his deposition testimony in which he testified that, while his duties would not change, he would be working part-time after December 31, 2005. In response to PSRS's contention that the school district never replaced Taveau after December 31, 2005, Taveau presented substantiated factual claims that, after December 31, 2005, the school district designated Phil Wright as the school district's contact person for all superintendent matters.

In response to PSRS's assertions that the board required a resignation letter and that he did not submit a letter, Taveau claimed that PSRS's witness on this matter testified only that it was an unwritten practice and not a requirement. Regarding PSRS's witnesses' claims that he did not submit a resignation letter, Taveau claimed that PSRS's witnesses could state only that they never received it and could not state that Taveau failed to submit such a resignation letter to someone else at the school district or the school board. Taveau also claimed that the payroll office did not require a letter of resignation. Taveau pointed to evidence in the record showing that the chief financial officer was aware that Taveau was retiring on December 31, 2005, and that she changed his information in the payroll system. Taveau also pointed to evidence in the record showing that he did, contrary to PSRS's allegation, submit a resignation letter, which terminated his full-time employment with LPSD on December 31, 2005. Taveau claimed that the letter was on file with the school district. Taveau also claimed that he submitted his resignation to the school board, which made his resignation effective on December 31, 2005.

In response to PSRS's allegations that, because Taveau was under contract, the school board was required to accept his resignation, Taveau pointed to places in the record showing that the school board accepted his employment addendum to this contract, which terminated his employment on December 31, 2005. He presented substantiated facts that the school board accepted his resignation in a closed meeting on October 17, 2005. Taveau presented evidence that he informed PSRS that he was retiring on December 31, 2005, and that he filled out his application for retirement, which indicated that his last day of employment would be December 31, 2005. Taveau also testified at the summary judgment hearing that he did, in fact, retire on December 31, 2005.

From the evidence that Taveau presented in defense of PSRS's motion for summary judgment and in support of his motion for summary judgment, a reasonable fact-finder could infer that Taveau resigned on December 31, 2005. Thus, although the evidence presented by PSRS supported a reasonable inference that Taveau did not resign on December 31, 2005, the record also supports the contrary inference. Because the record supports two plausible but competing inferences, the trial court should have found that a genuine dispute of material fact exists. *Ascoli v. Hinck*, 256 S.W.3d 592, 597 (Mo.App. W.D. 2008).

This conclusion is true even though PSRS complied with Rule 74.04(c)(2) by denying most of Taveau's additional facts. For example, PSRS claimed in both its motion and reply motion that Taveau wrote his resignation letter in August 2006 and backdated the letter so it would appear that he resigned in December 2005. But, once Taveau complied with Rule 74.04(c)(2) by making specific references to the record, as the non-moving party he

was entitled to rely on disputed facts to defeat the summary judgment motion. *Id.* This is true in either the case of the movant's statement of undisputed facts or the non-movant's statement of additional undisputed facts. *Id.* Taveau, therefore, carried his burden to place the material facts in genuine dispute. Having done so, the trial court erred in granting summary judgment for PSRS on the basis that Taveau did not retire on December 31, 2005.

### Applicability of Section 169.560

In his second point on appeal, Taveau claims that the trial court erred in granting summary judgment for PSRS on the grounds that Taveau violated section 169.560 by working more than 550 hours and receiving more than 50% of his salary. Taveau argues that he carried his burden to plead facts that were supported by evidence from the record, which if believed, established that he did not exceed 550 hours or receive more than 50% of his salary. Since these are separate proof elements, we will review each separately. We do, however, echo our previous commentary on the "retirement" issue; that is, the only reason we proceed to analyze the 550 hour and 50% compensation limitations of section 169.560 is because we have first concluded that there exists a material dispute as to the fact of whether or not Taveau did, in fact, retire from full-time employment with LPSD. Had we concluded that no material dispute existed on that issue and that the undisputed facts confirmed that Taveau had not retired from full-time employment, it would not be necessary to examine the 550 hour and 50% compensation limitations as examination of those issues only become relevant if the purported retiree has, in fact, retired from full-time employment. Of course, in the context of summary judgment, our ruling today merely confirms that the non-movant placed the fact of whether he retired

into material dispute. Because he did so, we proceed with our analysis of the additional limitations of section 169.560.

### The 550 Rule

As was discussed in Taveau's first point, a person in his employment group must actually retire from his or her employment to be entitled to retirement benefits. Section 169.560 provides an exception to this prerequisite by allowing a qualifying school district employee to maintain limited employment with the public school system and receive retirement benefits. Section 169.560 allows the qualifying school district employee to maintain employment and receive benefits as long as the employee works no more than 550 hours and makes no more than 50% of the salary for that position. PSRS has enacted a similar regulation, which states that:

> Part-time employment is any employment which is less than full-time. Temporary-substitute employment is any employment either in a position held by a regularly employed person who is temporarily absent, or in a position which is temporarily vacant. *A retired member may be employed by a district included in the system to serve on a part-time or temporary-substitute basis in any capacity not to exceed five hundred fifty (550) hours in any one (1) school year and through such employment may earn an amount not in excess of the compensation limit set forth in this rule and section 169.560, RSMo, without a discontinuance of the retired member's retirement allowance.* The limit on compensation shall be determined as set forth in section 169.560, RSMo. If the position or positions did not previously exist, a retired member may earn up to fifty percent (50%) of the annual compensation payable for the position within the district that is most comparable to

the position filled by the retired member without exceeding the compensation limit.

16 CSR 10–5.010(6) (emphasis added).

The parties agree that section 169.560 and 16 CSR 10–5.010(6) limited Taveau to working no more than 550 hours from January 1, 2006, through June 30, 2006, and no more than 550 hours from July 1, 2006, through June 30, 2007. The parties, however, dispute the two questions of interpretation regarding the application of section 169.560. The interpretation of section 169.560 is a question of law, which we review *de novo. Windsor v. Windsor,* 166 S.W.3d 623, 632 (Mo.App. W.D.2005).

■ The parties first disagree on the definition of "hours." Taveau argues that only the hours that he worked in his school district office at the school district office building should count toward the 550 hours limitation (the 550 Rule). Taveau claims that the hours that he worked from home or at conferences in other locations could not count towards the 550 Rule.

When interpreting a statute, we must ascertain the General Assembly's intent by giving the statute's language its plain and ordinary meaning. *Cline v. Teasdale,* 142 S.W.3d 215, 222 (Mo.App. W.D.2004). If the General Assembly's intent is unambiguous, then we are bound by that intent and cannot resort to any statutory construction. *Id.* If we cannot ascertain the General Assembly's intent by giving the statute's language its plain and ordinary meaning, then we consider the statute ambiguous and apply the rules of statutory construction to determine the legislature's intent. *Preston v. State,* 33 S.W.3d 574, 579 (Mo.App. W.D.2000).

Neither the statute nor regulation defines "hours" for the purpose of section 169.560. The plain and ordinary wording of section 169.560 simply says that the retiree cannot "exceed a total of five hundred fifty hours[.]" The legislature's use of the word "hours" in the statute is general and does not restrict the type of hours that the person must count towards the 550 Rule. If the legislature intended this qualification to be limited to "physical office hours," the legislature could have added such limiting language in the qualification. Since it did not, we can safely conclude that the legislature intended for the 550 Rule to extend to all hours that a person works for the employer, whether at the office of the employer or not.

Our interpretation of section 169.560 is consistent with the General Assembly's goal in enacting the section. The legislature's purpose in enacting section 169.560 was to allow qualifying school district retirees to work part-time while still receiving retirement benefits. The legislature's obvious goal in enacting the Rule was to prevent people from double-dipping by working full-time and still receiving retirement benefits. Nothing in section 169.560 shows that the legislature adopted the 550 Rule because it was concerned about the location where the employee was working. And, if we adopted a definition of "hours" in which "hours" meant only hours in the office and not hours worked from another location, it would allow people to circumvent the 550 Rule by working from home. This would frustrate the legislature's goal of attempting to prevent people from double-dipping. We, thus, conclude that the legislature intended for "hours" to include all hours regardless of where the retiree worked. Having determined that all hours count towards the 550 Rule, we turn to the second legal issue, which is the penalty for exceeding the 550 Rule.

■ PSRS argues that, under the statute and regulation, it just has to prove that Taveau worked more than 550 hours during the relevant period. PSRS argues

that, upon making this showing, Taveau becomes disqualified from receiving retirement benefits for the entire period in which such benefits were paid and he must repay all the benefits that he received during such period. Taveau, however, claims that PSRS is required to establish the approximate date when he violated the 550 Rule. He claims that he is only disqualified from receiving benefits after that date. For reasons that we discuss *infra*, we agree with Taveau.

Regulation 16 CSR 10–5.010(6), which addresses the impact of a person's violation of the 550 Rule and the 50% of compensation limitation, states that "[i]f such employment exceeds either the limitation on hours worked or the limitation on compensation, payment of benefits to the retired member *shall cease until the employment terminates or a new school year begins.*" (Emphasis added.) Under the plain and ordinary wording of this regulation, a retiree is entitled to benefits until he exceeds either limitation. Once he exceeds the limitations, the retiree is not allowed to receive any benefits until he meets one of two conditions: (1) he terminates his employment, or (2) a new school year begins. The second condition makes sense because once a new school year begins, section 169.560 and 16 CSR 10–5.010(6) allow the retiree to work another 550 hours at 50% of his prior salary. The regulation contemplates a scenario where a retiree could work part-time and receive benefits for a few months and at some point go over the 550 hours limitation and lose future benefits until the new school

year starts. Thus, the regulation's penalty for violating the 550 hours or 50% limitation is prospective in application—the retiree loses the right to receive benefits for the rest of the period. Nothing in section 169.560 or 16 CSR 10–5.010(6) establishes that the penalty for violating the limitations is retroactive in application, which would mean that the retiree must pay back all of the benefits that he received during the period.

Our interpretation of 16 CSR 10–5.010(6) makes even more sense when we compare it to 16 CSR 10–5.010(2), which is the regulation that addresses the penalty for a person receiving retirement benefits even though he fails to retire.[5] 16 CSR 10–5.010(2) states that "[t]he member shall be required to repay any benefit payments paid if it is determined that the member did not terminate employment covered by the retirement system." Under the plain and ordinary wording of 16 CSR 10–5.010(2), a person who fails to retire is required to pay back any and all benefits that he received from the pension plan. Because of the different language of this regulation, it is obvious that PSRS understood the difference of how to draft a regulation requiring a person to repay benefits retroactively or proactively. Since there is no comparable sentence in 16 CSR 10–5.010(6), we can assume PSRS did not want a retiree who violated the 550 Rule or 50% compensation limitation to forfeit all his prior retirement payments by requiring him to repay the retirement benefits that he received during the peri-

---

5. Subsection 2 of 16 CSR 10–5.010 identifies the penalty provision that would be applicable if a fact-finder were to ultimately conclude that Taveau did not, in fact, retire from full-time employment with LPSD. Subsection 6 of 16 CSR 10–5.010 is only applicable to address the penalty to Taveau if a fact-finder should ultimately conclude that Taveau did, in fact, retire from full-time employment with LPSD,

but he either violated the 550 Rule or the 50% Compensation Rule. As described more fully in the text of our ruling today, there are distinctly different penalties associated with (1) failure to retire vs. (2) violation of 550 Rule or 50% Compensation Rule (after first demonstrating that the precondition of "retirement from full-time employment" has actually occurred).

od. Rather, PSRS only intended for him to forfeit his right to future payments in that period. Hence, based on 16 CSR 10–5.010(6), to establish the amount that a retiree must reimburse PSRS, PSRS must establish when the retiree violated the 550 Rule.

Given our interpretation of section 169.560 and 16 CSR 10–5.010(6), to carry its burden to establish a *prima facie* case for summary judgment on this issue, PSRS was required to present facts supported by the record showing that Taveau worked more than 550 hours from January 1, 2006, through June 30, 2006, and more than 550 hours from July 1, 2006, through June 30, 2007. And, given our interpretation of 16 CSR 10–5.010(6), to establish its right to a correction or adjustment in retirement benefits paid to Taveau, PSRS was required to establish when Taveau violated the 550 Rule.

In order to carry that burden in its motion, PSRS presented evidence that, among other things, Phil Wright had personally observed Taveau work more than 550 hours for both periods. PSRS also pointed to the deposition testimony of Sandra Cockrum, who testified that she kept a calendar of days that Taveau was scheduled to be in and out of the office. Cockrum's calendar arguably showed that Taveau was present at his Liberty office 76 days for the first six months of 2006 which, at eight hours per day, meant that Taveau worked over 550 hours from January 1, 2006, through June 30, 2006. PSRS also relied on Cockrum's testimony that her calendar showed that Taveau worked more than 550 hours from July 1, 2006, through June 30, 2007. PSRS also presented evidence that Taveau went on numerous out-of-town conferences on behalf of the school district and, during these conferences, he engaged in work for the school district. We agree with PSRS and the trial court

that the presentation of these facts supported by the record implies that Taveau worked more than 550 hours during both periods.

Furthermore, in its motion, PSRS presented evidence that Wright had personal knowledge that Taveau had violated the 550 Rule by April 2006 for the period of January 1, 2006, through June 30, 2006. Regarding the period from July 1, 2006, through June 30, 2007, PSRS presented evidence that Wright had personal knowledge that Taveau had violated the 550 Rule by December 2006. Under these facts, PSRS made a *prima facie* case that Taveau violated the 550 Rule during both periods and PSRS further made a *prima facie* case as to when the 550 Rule violation occurred.

■ Because PSRS made a *prima facie* case for summary judgment on these issues related to the 550 Rule, the only way for Taveau to avoid summary judgment was to place in genuine dispute one or more of the material facts on which PSRS relied. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. In his motion and response to the motion of PSRS, Taveau sought to do so by directly controverting the facts that PSRS relied upon in its motion. For example, in response to PSRS's allegation that Wright testified that Taveau worked more than 550 hours in both periods, Taveau presented evidence that Wright had no firsthand knowledge of Taveau's hours. Taveau also presented evidence that other witnesses would testify that Taveau did not work more than 550 hours in either period. Taveau also presented evidence that LPSD had notified PSRS that Taveau was in compliance with the requirements of section 169.560. Taveau presented evidence that he provided Wright and other people with a work log, demonstrating that he was in compliance with the 550 hours limitation.

352

In response to PSRS's allegation that Sandra Cockrum's testimony regarding her calendar established that Taveau violated the 550 Rule, Taveau presented evidence that Cockrum conceded that her calendar was not an attendance log. Rather, it was a planning tool so Cockrum would have a general idea of when Taveau planned on being in the office. Taveau also presented evidence that Cockrum would testify that, if Taveau failed to come into the office on a day that her calendar showed he would, she did not modify her calendar. Finally, at the hearing, Taveau testified that he was in compliance with the 550 Rule.

From the evidence that Taveau presented in his motion and in response to PSRS's motion, a reasonable fact-finder could infer that Taveau did not work more than 550 hours during either period. Thus, although the evidence presented by PSRS supported a reasonable inference that Taveau did work more than 550 hours during both periods, the record also supports the contrary inference. Because the record supports two plausible but competing inferences, the trial court was required to have found that a genuine dispute of material fact exists. *Ascoli,* 256 S.W.3d at 597.

This conclusion is true even though PSRS complied with Rule 74.04(c)(2) by denying most of Taveau's additional statement of undisputed facts. For example, PSRS presents evidence in both its motion and reply to Taveau's motion that Taveau created his time log after the fact and that it was not an accurate representation of the time that he worked. PSRS also presented evidence that Taveau's time log failed to account for the time that he spent at educational conferences on behalf of LPSD. But, once Taveau complied with Rule 74.04(c)(2) by making specific references to the record, as the non-moving party to PSRS's motion for summary judg-

ment, he was entitled to rely on disputed facts to defeat the summary judgment motion. *Id.* Taveau, therefore, carried his burden to place material facts in genuine dispute. Having done so, the trial court erred in granting summary judgment for PSRS on the basis that Taveau violated the 550 Rule.

### The 50% Compensation Rule

Before we address whether or not PSRS carried its burden to establish a *prima facie* case for summary judgment on the issue of whether or not Taveau received more than 50% of his salary during either period, we must address the parties' argument regarding the definition of compensation for the 50% compensation limitation. As we noted above, section 169.560 states:

> Any person retired and currently receiving a retirement allowance pursuant to sections 169.010 to 169.141, other than for disability, may be employed in any capacity in a district included in the retirement system created by those sections on either a part-time or temporary-substitute basis not to exceed a total of five hundred fifty hours in any one school year, *and through such employment may earn up to fifty percent of the annual compensation* payable under the employing district's salary schedule for the position or positions filled by the retiree, given such person's level of experience and education, without a discontinuance of the person's retirement allowance.

Thus, under the statute, a retiree can receive up to 50% of the annual compensation for the position that he fills (the 50% Compensation Rule). In this instance, the relevant "position" is that of district superintendent. The parties agree that there was no salary schedule for the position. They also agree that the 50% limitation on

Taveau's salary should be based on compensation that the last full-time superintendent received, which, in this case, was Taveau in 2005–2006. The parties disagree on how to calculate Taveau's 2005–2006 compensation. PSRS contends that Taveau's 2005–2006 compensation includes only his wages and health insurance. Taveau, however, argues that we should adopt a broader definition of compensation that includes the value of all of the fringe benefits that he received in 2005–2006.

Section 169.560 does not define compensation but it does reference section 169.010, which is the definition section for sections 169.010 to 169.130. Section 169.010 states that:

> (15) "Salary", "salary rate" or "compensation" shall mean the regular remuneration, including any payments made pursuant to sections 168.500 to 168.515, RSMo, which is earned by a member as an employee of a district, but not including employer-paid fringe benefits except the value of employer-paid medical benefits (including dental and vision) for members, and not including employer-paid medical benefits (including dental and vision) for anyone other than the member, employer contributions to any deferred compensation plan, consideration for agreeing to terminate employment or other nonrecurring or unusual payments that are not a part of regular remuneration. The board by its rules may further define salary, salary rate and compensation in a manner consistent with this definition and with sections 169.010 to 169.141[.]

Pursuant to 16 CSR 10–3.010(11), the board has also defined compensation as:

> (11) The terms "salary," "salary rate" and "compensation" are synonymous when used in regulations promulgated by the board, unless the context plainly requires a different meaning.

> (A) For purposes of calculating contributions and benefits, those terms mean the regular remuneration earned by a member as an employee of any covered district during a school year, including (unless excluded by subsection (11)(B)):

> 1. Salary paid under the terms of the basic employment agreement;

> 2. Wages;

> 3. Payments for extra duties, whether or not related to the employee's regular position;

> 4. Overtime payments;

> 5. Career ladder payments made pursuant to sections 168.500 to 168.515, RSMo;

> 6. Supplemental salary paid in addition to workers compensation;

> 7. Medical benefits as specified in section (9) of this rule;

> 8. Payment for annual leave, sick leave or similar paid leave actually used by the member;

> 9. Payment for leaves of absence if at least one hundred percent (100%) of previous contract rate;

> 10. Compensation on which taxation is deferred under *Internal Revenue Code* (IRC) section 401(k), 403(b), 457, 414(h)(2) or similar plans established by the employer under the IRC;

> 11. Salary reductions for purposes of a plan established by the employer under IRC section 125; and

> 12. Other similar payments that are earned by a member as an employee of any covered district during a school year.

> (B) Salary, salary rate and compensation do not include:

> 1. Payments for services as an independent contractor, or any other pay-

ment that must be reported on IRS form 1099–MISC;

2. Payments made by an entity that is not a covered employer, and reported to the IRS under that entity's tax identification number;

3. Payments made for unused annual, sick or similar leave time, except as provided by section 104.601, RSMo;

4. Payment for leaves of absence if less than one hundred percent (100%) of previous contract rate, except as provided in section 169.055 or 169.595, RSMo;

5. Extraordinary payments such as bonuses, awards and retirement incentives;

6. Fringe benefits, except medical benefits as described in section (9) of this rule; and

7. Any other payment that is not part of the regular remuneration earned by a member as an employee of a covered district during a school year.

16 CSR 10–3.010(11).

Taveau concedes that these definitions of compensation exist. He maintains, however, that they are inapplicable to the definition of compensation for the purposes of the 50% Compensation Rule. He points out that the definition section in section 169.010 starts by stating that its definitions apply only to sections 169.010 to 169.130. Thus, Taveau argues that these definitions of "compensation" do not apply to section 169.560.

Taveau is correct that section 169.010 begins by stating that the following definitions apply to sections 169.010 through 169.130: "The following words and phrases, as used in sections 169.010 to 169.130, unless a different meaning is plainly required by the context, shall have the following meanings[.]" However, Taveau's argument ignores the fact that the General Assembly referenced section 169.010 in

section 169.560. From this, we conclude that the General Assembly intended for the definitions of section 169.010 to apply to section 169.560. Regardless, even assuming that this reference did not establish the General Assembly's intent to have section 169.010 apply to section 169.560, we can think of no reason why the General Assembly would want one definition of "compensation" for the purpose of establishing contributions for the system and another broader definition of "compensation" for the purpose of the 50% Compensation Rule in section 169.560. Similarly, Taveau fails to explain why there should be different definitions of compensation for the different sections. We, therefore, conclude that the definition of "compensation" in section 169.010 and 16 CSR 10–3.010(11) are applicable to section 169.560. Thus, for the purposes of the 50% Compensation Rule in section 169.560, Taveau's 2005–2006 compensation includes only his wages and health insurance.

Given our interpretation of section 169.560 and 16 CSR 10–5.010(6), to carry its burden to establish a *prima facie* case for summary judgment on this issue, PSRS was required to present substantiated facts in support of its motion showing that Taveau received more than 50% of his 2005–2006 compensation for the period from January 1, 2006, through June 30, 2006, and received more than 50% of his 2005–2006 compensation for the period from July 1, 2006, through June 30, 2007.

■ In its motion, PSRS presented substantiated facts showing that Taveau received an annual salary of $173,128 for the 2005–2006 year. PSRS also presented substantiated facts that LPSD paid $3,989.72 for medical insurance premiums for Taveau. From these facts, a fact-finder could conclude that Taveau's 50% compensation limit for the two periods was $88,558.86. PSRS also presented substan-

tiated facts in its motion showing that LPSD paid Taveau $86,564.01 for the period between January 1, 2006, and June 30, 2006. PSRS presented substantiated facts that, during this same period, LPSD paid $2,033.82 for Taveau's medical insurance premiums. These two sums total $88,597.83. PSRS also presented substantiated facts showing that Taveau received additional compensation from LPSD when he purchased items on LPSD's credit cards but failed to reimburse LPSD. From these facts, PSRS established a *prima facie* case that Taveau exceeded the 50% Compensation Rule for the period between January 1, 2006, and June 30, 2006.

PSRS also established a *prima facie* case that Taveau exceeded the 50% Compensation Rule for the period between July 1, 2006, and June 30, 2007. Specifically, in its motion, PSRS presented substantiated facts showing that LPSD paid Taveau a salary of $88,514 for the period between July 1, 2006, and June 30, 2007, and paid $4,191.42 for his insurance premiums for this period. PSRS also presented substantiated facts in its motion showing that LPSD paid Taveau another $45,382 on June 25, 2007. From these facts, PSRS carried its burden to create a *prima facie* case for summary judgment on the issue of whether or not Taveau exceeded the 50% Compensation Rule for the two periods.

PSRS's motion, however, fails to establish with any specificity when these payments occurred. As we noted above, under our interpretation of 16 CSR 10–5.010(6), to establish its right to a correction or adjustment relating to an overpayment of Taveau's retirement benefits, PSRS was required to establish when Taveau exceeded the limitations in section 169.560. At that point, Taveau was not entitled to receive any *additional* retirement benefits for the applicable period. PSRS's motion, however, fails to allege

any facts showing when Taveau exceeded those limitations. Thus, PSRS failed to make a *prima facie* case for summary judgment on the amount of reimbursement due from Taveau.

Taveau concedes that, under the statutory definition of "compensation" we have concluded applies to the 50% Compensation Rule, he may have exceeded the 50% Compensation Rule for the period between January 1, 2006, and June 30, 2006, by an amount less than $40, but as stated previously, there remains no undisputed "fact" as to when he may have exceeded the 50% Compensation Rule. Certainly, the parties dispute the amount in which Taveau exceeded the 50% Compensation Rule for this period. Taveau also argues that he has presented substantiated facts controverting the amount that he was over the 50% Compensation Rule threshold during the period between July 1, 2006, and June 30, 2007. Specifically, in his motion, Taveau presented substantiated facts that the June 25, 2007 payment of $45,382 was not "compensation" for that period. Rather, he presented substantiated facts establishing that it was "compensation" for the period between July 1, 2007, and June 30, 2008, the time period in which he planned on doing consulting work for LPSD. If a fact-finder believed this evidence, it would establish that the amount was not "compensation" for his superintendent work. Thus, Taveau carried his burden under Rule 74.04 to place the issue of whether, and how much, he violated the Compensation Rule in either or both time periods into genuine dispute. The trial court, therefore, erred in entering summary judgment on the issue of whether or not Taveau violated the 50% Compensation Rule in either or both of the time periods in dispute and, if so, when such violation occurred. Regardless, the trial court erred in entering summary judgment in

# 356

favor of PSRS on the 50% Compensation Rule issue.

## Taveau's Final Point Not Ripe for Consideration

In his third point, Taveau claims that the trial court erred in granting summary judgment against him and ordering him to reimburse PSRS because he argues that PSRS lacks the statutory authority to recoup retirement benefits from him. Since we have concluded that there is a genuine issue of material fact regarding whether or not Taveau was entitled to some or any retirement benefits, it is unclear whether or not PSRS is entitled to a judgment against Taveau on any issues in this case, yet alone any amount that PSRS could claim to be entitled to in recoupment or adjustment of benefits previously paid to Taveau.[6]  Thus, this issue is not ripe for our consideration, *Ports Petroleum Co., Inc. of Ohio v. Nixon,* 37 S.W.3d 237, 241 (Mo. banc 2001), and we decline to entertain adjudication of this legal question until the parties are able to demonstrate that actual rights and liabilities have been affected. *Akin v. Dir. of Revenue,* 934 S.W.2d 295, 298 (Mo. banc 1996).

## Conclusion

We reverse the trial court's grant of summary judgment and remand the case for trial.

KAREN KING MITCHELL, Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.

---

**6.** While this issue is not ripe for adjudication, we note that section 169.080 RSMo 2000 would appear to be instructive on the issue of correcting overpayments made to retirees under the subject retirement system, should the trial of this case result in a determination that Taveau received more retirement benefits than he was entitled to receive.