EUREKA PIPE, INC., et al., Appellants,

v.

CRETCHER–LYNCH & COMPANY and
Ray Ritchey, Respondents.

No. WD 39873.

Missouri Court of Appeals,
Western District.

July 19, 1988.

Roy Bash, Sherman A. Botts, Kansas
City, for appellants.

Martin M. Meyers, Kansas City, for re-
spondents.

Before KENNEDY, C.J., and
SHANGLER and BERREY, JJ.

KENNEDY, Chief Judge.

This is an appeal from a summary judg-
ment granted to defendants Cretcher–
Lynch and Company and Ray Ritchey on
two counts of a five-count petition for dam-
ages by plaintiffs Eureka Pipe, Inc., John
Leath and Karen Messerli.

Eureka Pipe was in the water and sewer
line construction business. In order to do
business profitably, it needed a bonding
capacity of 2.5 to 3 million dollars, which
was considerably more than it had. Indi-
vidual plaintiffs John Leath and Karen
Messerli, president and vice-president re-
spectively of Eureka Pipe, consulted with
defendant Ray Ritchey, who was an em-
ployee of Cretcher–Lynch, an independent
bond and insurance broker with offices at
Wichita, Kansas. Leath and Eureka Pipe
had done business with Cretcher–Lynch be-
fore, and with Ritchey representing Cretch-
er–Lynch.

Ritchey after reviewing Eureka's finan-
cial position with Leath and Messerli, and

with Eureka's accountant, George Nicholson in October, 1984, advised them to take certain specific steps to improve Eureka's financial position, upon the completion of which the desired bonds could be obtained. In pursuance of Ritchey's recommendations, and upon his assurance that the bonds of the required size could then be obtained, Leath and Messerli proceeded to invest $200,000 of their own funds in the business; obtained extended maturities of Eureka's bank loans by the expedient of giving their personal guaranties thereof; and obtained extensions of obligations owing by Eureka to vendors, perhaps by personally guaranteeing payments of the same. They then furnished Eureka's new financial statement to Ritchey. Ritchey at all times assured and reassured them that the bond would be available when required.

Eureka soon had an opportunity to bid on a construction project for Lee's Summit, Missouri. Once again Ritchey assured Leath and Messerli that a bond of the required size would be available. Eureka proceeded to bid on the Lee's Summit project and was the successful bidder at a bid of $1 million.

Cretcher–Lynch and Ritchey were then unable to place the bond, and Eureka lost the Lee's Summit contract. This lawsuit followed.

Various counts of plaintiffs' five-count petition sound in breach of contract, negligence, malpractice, and two in fraudulent misrepresentation. Defendants were granted summary judgment on the fraudulent misrepresentation counts, and the parties on this appeal join issue on those counts. Plaintiffs dismissed the other counts (without prejudice) so we have a final judgment.

The fraudulent misrepresentations relied upon were Ritchey's statements that the bond would be available when Eureka's financial position had been shored up as recommended.

Defendant's motion for summary judgment argues (and they maintain the same position in their briefs here) that Ritchey's statements alleged to have been fraudulent misrepresentations were mere predictions, or statements of expectation, or were promissory in character, and were not misstatements of existing fact. Such statements, they say, do not support a claim of fraudulent misrepresentations. For their position, they cite *Arnott v. Kruse*, 730 S.W.2d 597, 600 (Mo.App.1987).

Plaintiffs on the other hand seek to overturn the summary judgment, arguing that Ritchey had superior experience and knowledge in the bond business and that plaintiffs had the right to accept as fact Ritchey's assurance that the bond would be forthcoming. For their position they cite *Nichols v. Hendrix*, 312 S.W.2d 163 (Mo. App.1958).

The legal principles that plaintiffs and defendants are advancing here are stated as follows in *Dawes v. Elliston*, 369 S.W.2d 285, 287–288 (Mo.App.1963):

Defendant contends that the above statement cannot form the basis of a charge of fraud because such a statement must relate to an existing fact; that an opinion as to the happening of a future event does not constitute actionable fraud. Such has been declared to be the law. (Citations omitted.)

But there is an exception to that rule, as Judge Broaddus stated in *Nichols v. Hendrix.* ... False representations and promises as to what will result in the future, when made by one professing to have superior knowledge based on past experience of himself or others, are, in effect false representations of existing conditions and support allegations of fraud.

Did the Rule 74.04 evidence before the court upon defendant's motion for partial summary judgment foreclose "by unassailable proof" any recovery by plaintiffs upon their fraudulent representation counts?

We have concluded that the trial judge ruled correctly in granting the partial summary judgment. The deposition testimony both of Leath and Messerli was that they understood that Ritchey and Cretcher–Lynch were not employees of any bonding company; that they were without authority to bind any bonding company; and that the bonding companies would themselves approve or disapprove the execution of bonds. In this state of their

admitted knowledge, they cannot maintain their stance that they were ignorant of Ritchey's and Cretcher–Lynch's lack of authority and that they could, because of Ritchey's superior knowledge about the bond business, rely upon his assurances. It was no doubt true that Ritchey knew more about the performance bond business generally than did Leath or Messerli, but the superiority of his knowledge did not give Leath or Messerli the right to rely upon his representations when they knew that he could not bind any surety company. On that point, their knowledge was equal to Ritchey's. The rule is applicable here which holds that a statement is not actionable that an independent third person (the surety company) will do some particular thing. *See* 37 C.J.S. Fraud Sec. 11 (1975); *United Finance Co. v. Kliks*, 210 Or. 288, 310 P.2d 1103, 1108 (1957); *Hansen v. Holmberg*, 176 Or. 173, 156 P.2d 571, 573 (1945).

After the trial court had granted the partial summary judgment, the plaintiff filed a "Motion for Reconsideration" to which they attached an affidavit of Karen Messerli which stated that Ritchey, six weeks after the October, 1984, representations were made (which had been before the court on the motion for partial summary judgment), had said: "I am the bonding company and you have a bonding commitment". This statement, according to the affidavit, had been made by Ritchey in response to Messerli's request that Eureka be furnished a written commitment from a bonding company, and after he had told her that bonding companies did not usually provide such written commitments.

Also submitted with the Motion for Reconsideration was certain testimony of George Nicholson, Eureka's accountant, and of William Dexter, a banker, with reference to statements made by Ritchey. Dexter's testimony only corroborates that of Leath and Messerli that Ritchey had made statements that adequate bonding would be available after Eureka's financial condition was improved as recommended. Nicholson had talked with Ritchey as he, Nicholson, was preparing December 31, 1984, audited financial statements for Eureka. He wanted to know about Eureka's bonding capacity to determine if he should place a "going concern" qualification on his statement. He testified that he had conversations with Ritchey and concluded: "My understanding was that they had the bonds."

It is not at all clear that plaintiff's "newly discovered evidence" offered with the Motion for Reconsideration changed the effect of the assurances which Ritchey had made earlier and which the trial court had before him with the Motion for Summary Judgment.

The Motion for Reconsideration is treated as a motion for a new trial in a court-tried case, *see Farmers State Bank v. Place–Wiederholt*, 747 S.W.2d 170, 172 (Mo.App.1988), and the newly discovered evidence is treated as having been offered in support of and as grounds for a new-trial motion. The trial court's ruling upon this ground is discretionary, his discretion to be governed by the criteria listed in *Executive Jet Mgmt. v. Scott*, 629 S.W.2d 598, 610 (Mo.App.1981). One of those criteria is that "the new evidence is so material it would probably produce a different result". At that point we are unable to say that the newly discovered evidence was so likely to produce a different result that the court abused its discretion in refusing the Motion for Reconsideration. Ritchey's later statement to Messerli ("I am the bonding company and you have a bonding commitment") could not have been understood literally by her, in the context of the conversation in which it was made, and in the light of her knowledge that Eureka did not and could not have any bonding commitment at that time. Dexter's testimony actually adds nothing. Ritchey's statement to Nicholson—or Nicholson's "understanding" thereof—was not communicated to Eureka, so far as the Motion for Reconsideration shows, and induced no action by Eureka in reliance thereon.

The judgment is affirmed.

All concur.