**WELLCRAFT MARINE, Plaintiff,**

v.

**John C. LYELL, Appellant,**

**Nationscredit Commercial Corporation, Respondent.**

**No. WD 52847.**

Missouri Court of Appeals, Western District.

Jan. 27, 1998.

Scott C. Long, Kansas City, for appellant.

Deborah R. Swank, Niewald, Waldeck & Brown, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

John Lyell appeals from the trial court's order granting NationsCredit Commercial Corporation's motion for judgment notwithstanding the verdict in this negligent misrepresentation case. Mr. Lyell brought this action against NationsCredit, alleging that its representative negligently misled him in the business dealings of his company, CAM Investments, Inc., with NationsCredit and Wellcraft Marine. On appeal, Mr. Lyell contends that the trial court erred in granting NationsCredit's motion for judgment notwithstanding the verdict because there was sufficient evidence to support the jury's finding that NationsCredit committed negligent misrepresentation. Mr. Lyell also alleges that the trial court erred in entering judgment notwithstanding the verdict against him because the justifiability of his reliance on NationsCredit's representations was a question of fact for the jury. Because a negligent misrepresentation as to the future actions of an independent third party is not actionable, as a matter of law, the trial court did not err in entering judgment notwithstanding the verdict in favor of NationsCredit. Therefore, the judgment of the trial court is affirmed.

### Factual and Procedural Background

 This court views the facts in a light most favorable to the party against whom judgment notwithstanding the verdict was entered. *Thieme v. Tour–Toiseshell, Inc.,* 887 S.W.2d 795, 796 (Mo.App.1994). However, the trial court is entitled to consider conceded or admitted facts. *See Spear v. Heine Meine, Inc.,* 343 S.W.2d 1, 7 (Mo. 1961); *Patrich v. Menorah Medical Center,* 636 S.W.2d 134, 137 (Mo.App.1982). The facts are that Mr. Lyell was a shareholder and principal of CAM Investments, Inc. Cam Investments, d.b.a. Magic Dragon Marine, operated a retail boat sales and maintenance business under a distributorship agreement with Wellcraft Marine. Its inventory from Wellcraft Marine was financed through a floor plan agreement with NationsCredit.[1] Under a security agreement between CAM Investments and NationsCredit, NationsCredit provided the funds for CAM Investments to purchase boats from Wellcraft, and NationsCredit was repaid when the boats were sold. NationsCredit's floor plan financing for Wellcraft dealers was pursuant to a repurchase agreement with Wellcraft which obligated Wellcraft to repurchase any boat repossessed by NationsCredit upon the default of a Wellcraft dealer. The repurchase agreement made Wellcraft liable to NationsCredit if the value of the repossessed boat did not exceed the amount of the dealer's debt to NationsCredit. Wellcraft's obligation to repurchase boats repossessed by NationsCredit was limited to two years from the original purchase date.

When Mr. Lyell purchased CAM Investments' stock, a transfer of the Wellcraft dealership was required. As a condition of the transfer of the dealership, Mr. Lyell signed a personal guaranty in favor of Wellcraft. Although Mr. Lyell thought he was guaranteeing the operation of CAM's parts department, the terms of the guaranty required him to reimburse Wellcraft for any losses it sustained if any of CAM Investments' boats were repossessed and Wellcraft became obligated under the repurchase agreement to pay NationsCredit for a deficiency. NationsCredit was not a party to the guaranty.

In 1990, CAM Investments' retail boat business began to drop off as a result of a recession and concerns over oil prices after the Iraqi invasion of Kuwait. Mr. Lyell and his business partner decided to get out of the retail boat business. By early 1992, CAM Investment's inventory was reduced to four boats. About this same time, NationsCredit management decided it no longer wanted to finance Wellcraft's distributorships. As a result, Floyd Shewmake, a representative of NationsCredit, contacted Mr. Lyell to arrange a meeting to discuss termination of its floor plan financing agreement with CAM Investments. Nearly two years had passed since the original purchase of the boats by CAM Investments, and Wellcraft's obligation to repurchase the boats was about to expire.

On July 28, 1992, Mr. Lyell met with Mr. Shewmake to discuss CAM Investments' account with NationsCredit. According to Mr. Lyell, the following conversation occurred between him and Mr. Shewmake:

> Mr. Shewmake: You know, we're getting out of the financing business with Chrysler. We're closing out our Wellcraft accounts. You've been a good account for us. You've got four boats left. We would like to get out of this. Wrap the books up on it and go on to something else. I think we've got a way that we can do this.
>
> Mr. Lyell: Fine. I'm listening.
>
> Mr. Shewmake: We've got a repurchase agreement with Wellcraft. In other words, if we turn these boats back in, Wellcraft will pay us. Then you won't owe us anything and you won't owe Wellcraft anything.
>
> Mr. Lyell: Are you sure of all this?
>
> Mr. Shewmake: Yes. You have a personal guaranty.
>
> Mr. Lyell: I don't have a personal guaranty as far as the boats go. Only thing I ever signed when we originally opened up, they told me it was for parts.
>
> Mr. Shewmake: Well, under those cases, let us take the boat back. We'll turn them into Wellcraft. You won't owe us anything. You won't owe Wellcraft anything.

---

**1.** At this time, NationsCredit operated under the name of Chrysler First Credit Corporation.

Mr. Lyell: Well, what about if there is any damage or anything to the boats?

Mr. Shewmake: Don't worry about that. Wellcraft never charges their dealers back.

Mr. Lyell's understanding of his meeting with Mr. Shewmake was set out in a hand-written message on a post-it note. He stated, "Not picking them up, but Floyd, at [NationsCredit] thought they might sell them rather than us sending them back. [NationsCredit] is 100 percent recourse with Well-craft, and since we didn't sign a personal guaranty with Wellcraft, Floyd thought we would be off the hook. . . ."

After meeting with Mr. Lyell, Mr. Shew-make also talked with William Shippey, the manager of CAM Investment's boating business. He confirmed with Mr. Shippey that if Cam Investment consented to the repossession of the boats by NationsCredit, no one would "be held responsible for anything else." As a result of these conversations with Mr. Shewmake, Mr. Lyell decided not to pursue alternative floor plan financing for CAM Investment's remaining inventory and to allow three boats to be repossessed by NationsCredit. According to Mr. Lyell, Mr. Shewmake promised him that he would not be obligated to Wellcraft with regard to any moneys owed due to deficiency upon resale of the boats that were repossessed. Mr. Lyell testified that he relied on Mr. Shewmake's representation that he would have no financial liability if he allowed his boats in inventory to be repossessed.

Mr. Lyell also testified, however, that on the date of his conversation with Mr. Shew-make, he wrote a letter to Paul Jagdmann in the credit department at Wellcraft concerning Mr. Shewmake's suggestion that NationsCredit could repossess the remaining boats. In response to this letter, Linda Houpt of Wellcraft wrote to Mr. Lyell on August 4, 1992, stating:

[I]f we do bring back those four 1991 Wellcrafts, you will be responsible for loss on the resale of these units. Per my phone conversation with Bill Shippey on July 30, I informed Bill that you would be responsible for any losses. He informed me that he would get with you and get back to me. To date I have heard nothing from Bill.

On September 28th, again in advance of re-possession of the boats, Mr. Lyell received a letter from Mr. Jadgmann advising Mr. Lyell that he was going to have to pay the difference on any boats if he sent them back. Mr. Lyell responded by faxing back Mr. Jadg-mann's letter with the notation that, "When you have a loss, let me know. My attorney's name is Barry McCormick." The next day, Mr. Jadgmann wrote a letter to Mr. Lyell's lawyer which expressed Wellcraft's belief that Mr. Lyell was liable to Wellcraft under his personal guaranty. A copy of the guaranty was enclosed.

On October 16th, Mr. Shippey sent a fax to Eric Strutz, Mr. Shewmake's replacement at NationsCredit, advising Mr. Strutz that the boats were to be picked up on October 20, 1992. Mr. Shippey stated CAM Investment's understanding that, after the repossession:

These boats are then processed under the repurchase agreement between [Nation-sCredit] and Wellcraft Marine. Since Wellcraft is obligated to [NationsCredit], there is no legal or financial obligation on the part of Cam Investments doing business as Magic Dragon to [NationsCredit] once the boats have been picked up by Wellcraft.

Is that the way you see it? Let me know if there is anything else that I should know about this deal. . . .

Mr. Strutz did not reply. Two boats were picked up by NationsCredit in late October. After the repossession and sale of the boats, Mr. Jadgmann contacted Mr. Lyell, request-ing him to cover the losses on the repossessions of the boats under the aforementioned personal guaranty. Wellcraft had sold the boats for $95,000, incurring a loss of $45,300 because the boats were well-used and in need of considerable repair. After Mr. Lyell re-fused to pay Wellcraft for the deficiency in the repossession of the boats in the amount of $45,300, Wellcraft brought an action against him based on his personal guaranty. Mr. Lyell filed a third-party claim against NationsCredit asserting negligent misrepre-sentation and requesting NationsCredit to indemnify him for any money he might be

obligated to pay Wellcraft. Wellcraft won judgment against Mr. Lyell in the amount of $47,051.72 in addition to attorney fees and expenses. Mr. Lyell paid Wellcraft $45,000 in settlement of this matter.

On his third-party negligent misrepresentation claim against NationsCredit, Mr. Lyell claimed that NationsCredit, through Mr. Shewmake, negligently represented to him that he would owe Wellcraft nothing if he allowed NationsCredit to repossess the boats. The jury entered a verdict in favor of Mr. Lyell and awarded him $27,000 in damages against NationsCredit. Subsequently, NationsCredit filed a motion for judgment notwithstanding the verdict. In this motion, NationsCredit claimed that, as a matter of law, Mr. Lyell had no right to rely on Mr. Shewmake's statements concerning the future actions of Wellcraft, an independent third party. The trial court granted NationsCredit's motion for judgment notwithstanding the verdict on the ground that, as a matter of law, Mr. Lyell did not have a right to rely on Mr. Shewmake's representations. Mr. Lyell appeals from the trial court's order.

### Standard of Review

■ On appellate review, this court will affirm the trial court's order granting judgment notwithstanding the verdict "only when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against the plaintiff's case that there is no room for reasonable minds to differ and if the defendant was entitled to judgment as a matter of law." *Thieme*, 887 S.W.2d at 796. The trial court should grant a defendant's motion for judgment notwithstanding the verdict only if the plaintiff failed to make a submissible case. *Id.*

### Points on Appeal

### Point I

■ As his first point on appeal, Mr. Lyell contends that the trial court erred in entering judgment notwithstanding the verdict in favor of NationsCredit because the evidence supports the jury's finding that NationsCredit committed negligent misrepresentation. Mr. Lyell claims that the evidence at trial showed that Mr. Shewmake told Mr. Lyell that, if he allowed NationsCredit to repossess the boats, he would not owe anything to NationsCredit or to Wellcraft. Furthermore, Mr. Lyell claims that the evidence showed that Mr. Shewmake specifically advised him that this was the best course of action in terms of business and that Mr. Lyell relied on this advice in surrendering the boats to NationsCredit. Finally, Mr. Lyell points to the judgment entered against him in favor of Wellcraft in the amount of $47,051.72 and his payment of $45,000 in settlement of that claim as evidence that the representation was false and that he suffered harm as a result.

■ In order to determine whether the trial court properly entered judgment notwithstanding the verdict in favor of NationsCredit, this court considers whether Mr. Lyell made a submissible case on his claim for negligent misrepresentation. The elements of a claim of negligent misrepresentation are derived from the Restatement (Second) of Torts § 552 (1977). *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo.App.1994). Those elements are: (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss. *Id.* The failure to prove any one of these five elements is fatal to a claim of negligent misrepresentation. *Id.*

The trial court's grant of judgment notwithstanding the verdict was based on its finding that Mr. Lyell's evidence did not prove the fourth element, that he was justified in relying on the negligent misrepresentation of Mr. Shewmake, because Mr. Shewmake's misrepresentation concerned the future actions of an independent third party, Wellcraft. In so ruling, the trial court relied on the holding of a fraudulent misrepresentation case, *Eureka Pipe, Inc. v.*

*Cretcher–Lynch & Co.,* 754 S.W.2d 897, 899 (Mo.App.1988). In *Eureka Pipe,* the plaintiff brought a five-count action against the defendants, including two counts of fraudulent misrepresentation. The petition alleged that the defendants fraudulently misrepresented to the plaintiff that a third party would make a construction bond available to the plaintiff once its "financial position had been shored up as recommended." *Id.* at 898. In affirming the grant of summary judgment in favor of the defendants, the court relied on the fact that the plaintiff knew that the defendants were not employees of the third party and had no authority to bind it. *Id.* Even though the defendants had superior knowledge of the third party's bonding business, the fact that the plaintiff knew that defendants could not act to bind the third party precluded liability. *Id.* at 898–99. In reaching this result, the court adopted a rule from other jurisdictions that no fraudulent misrepresentation action lies which is based on a statement that an independent third party will do some particular thing. *Id.* at 899.

The rule of *Eureka Pipe* is analogous to a rule that other jurisdictions have applied in negligent misrepresentation cases. Under that rule, "a claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events," unless the statement is a representation of the speaker's present intention or concerns matters within the speaker's control. 37 C.J.S. Fraud § 59. *See also McAlister v. Citibank,* 171 Ariz. 207, 829 P.2d 1253, 1261 (Ariz.App.1992); *High Country Movin' v. U.S. West Direct,* 839 P.2d 469, 471 (Colo.App.1992); *Gross v. Sussex,* 332 Md. 247, 630 A.2d 1156, 1169 (1993); *Bank of Shaw v. Posey,* 573 So.2d 1355, 1360 (Miss. 1990); and *Fields v. Melrose Ltd. Partnership,* 312 S.C. 102, 439 S.E.2d 283, 285 (S.C.App.1993). Under this rule, there is liability for negligent misrepresentation as to a future event only if the event was under the speaker's control. The effect of this rule is nearly identical to the rule of *Eureka Pipe* that the representation is not actionable if it regards the future actions of an independent third party. If the third party is independent, the third party would not be under the control of the speaker, so the speaker would not be liable for any misrepresentations.

■ It is reasonable that there be comparable rules in negligent and fraudulent misrepresentation causes of action since these tort causes of action are both based on detrimental reliance on a factual misrepresentation. Both causes of action require justifiable reliance on the misrepresentation, whether it be fraudulent or negligent. *Colgan,* 879 S.W.2d at 689. A primary difference between fraudulent misrepresentation and negligent misrepresentation is that "fraudulent misrepresentation requires proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false, while negligent misrepresentation only requires that the defendant failed to exercise reasonable care or competence to obtain or communicate true information." *Jim Lynch Cadillac v. Nissan Motor Acceptance Corp.,* 896 S.W.2d 704, 707 (Mo.App.1995). Because the causes of action for fraudulent and negligent misrepresentation are so comparable, with any differences unrelated to the issue at hand, this court finds the rule of *Eureka Pipe* persuasive and applies it to determine whether Mr. Lyell justifiably relied on Mr. Shewmake's representations concerning Wellcraft.

Here, as in *Eureka Pipe,* Mr. Lyell was aware that Mr. Shewmake was not an agent of Wellcraft but was employed by NationsCredit. There is no evidence that Mr. Shewmake had authority to bind Wellcraft in any fashion with regard to the dealings with Mr. Lyell or that Mr. Lyell believed that Mr. Shewmake, as an employee of NationsCredit, could do so. Mr. Lyell argues that because Mr. Shewmake had superior knowledge of the agreement between NationsCredit and Wellcraft, he may pursue a negligent misrepresentation claim against NationsCredit. However, since Mr. Lyell knew that Mr. Shewmake did not speak for Wellcraft, he was on equal footing with Mr. Shewmake on that point. *Eureka Pipe,* 754 S.W.2d at 899.

■ In fact, there was evidence that Mr. Lyell's knowledge of his dealings with Wellcraft was superior to Mr. Shewmake's knowledge. Mr. Lyell's own testimony was that he

contacted Wellcraft after Mr. Shewmake represented that he would not be liable to anyone if he allowed NationsCredit to repossess the boats. Wellcraft unequivocally advised Mr. Lyell on several occasions that he would be personally liable to it for any deficiency on resale of the boats pursuant to his personal guaranty. "Generally, 'where a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby.' " *Colgan*, 879 S.W.2d at 690 (quoting *Consumers Co-op. Ass'n v. McMahan*, 393 S.W.2d 552, 556 (Mo.1965)). Although there are exceptions to this general rule, none apply, particularly because Mr. Shewmake's misrepresentation was premised on Mr. Lyell's statement that he had not given a personal guaranty to Wellcraft. NationsCredit was not a party to the personal guaranty and Mr. Shewmake relied on Mr. Lyell's representation of the nature of his guaranty. Mr. Lyell erroneously advised Mr. Shewmake of his liability. He was personally liable under his guaranty to Wellcraft, and that guaranty was the basis for Wellcraft's judgment against him.

Therefore, as a matter of law, Mr. Lyell had no right to rely on Mr. Shewmake's representations concerning the future actions of Wellcraft, an independent third party. The trial court did not err in entering judgment notwithstanding the verdict in favor of NationsCredit. Point I is denied.

### Point II

As his second point on appeal, Mr. Lyell contends that the trial court erred in entering judgment notwithstanding the verdict because Mr. Lyell's right to rely on Mr. Shewmake's representations was a question of fact for the jury, in light of his relationship with NationsCredit, the unequal positions of the parties and the nature of the representations made. Mr. Lyell claims that he was justified in relying on Mr. Shewmake's misrepresentation because Mr. Shewmake had superior knowledge of Wellcraft's agreement with NationsCredit. The uncontroverted facts are that Mr. Shewmake's misrepresentation was as to the future actions of Wellcraft, an independent third party who Mr. Lyell knew that Mr. Shewmake did not control. In addition, Mr. Lyell admitted that, prior to acting, he had information from Wellcraft that the statement of Mr. Shewmake was not true. These facts are insufficient to prove that Mr. Lyell was justified in relying on Mr. Shewmake's misrepresentation. *Eureka Pipe*, 754 S.W.2d at 898. *See also Centerre Bank of Kansas City v. Distributors*, 705 S.W.2d 42, 50 (Mo.App.1985). Mr. Lyell did not make a submissible case of negligent misrepresentation, so there were no factual issues for the jury's determination. *See Eureka Pipe*, 754 S.W.2d at 898. The issue is a question of law appropriate for this court's consideration and not a question of fact for the jury.

Mr. Lyell claims that *Frame v. Boatmen's Bank of Concord Village*, 824 S.W.2d 491 (Mo.App.1992) compels a contrary result. He cites *Frame* for the principle that "the reasonableness of plaintiff's reliance is normally a matter for the jury's determination." *Id.* at 493. *Frame* is not applicable to the facts of the instant case, however. In *Frame*, the plaintiff brought an action for negligent misrepresentation against a bank, claiming that the bank's vice president had made oral representations to him that it would lend him $1.6 million to purchase real estate. *Id.* at 492. Because the bank did not follow through on the vice president's promise to make the loan, the plaintiff was unable to purchase the property and lost earnest money in the amount of $4,300. *Id.* As a result, the plaintiff brought a negligent misrepresentation action against the bank seeking the lost earnest money and lost anticipated profits of over one million dollars. *Id.* The jury entered a verdict in favor of the plaintiff and the bank appealed. *Id.*

On appeal, the Eastern District of this Court affirmed the trial court's judgment in favor of the plaintiff on his claim for negligent misrepresentation. *Id.* at 494. The court held that "the reasonableness of plaintiff's reliance is normally a matter for the jury's determination." *Id.* at 493. Mr. Lyell contends that this result compels this court to rule in his favor.

Here, however, Mr. Shewmake was not a representative for Wellcraft when he made the representations to Mr. Lyell concerning CAM Investments' obligations to NationsCredit and Wellcraft. And, Mr. Lyell admitted that he knew that Mr. Shewmake was employed by NationsCredit and did not speak for Wellcraft. In *Frame*, the defendant was the vice president of the bank on whose behalf he was making the representations. Because *Frame* does not address a representation made concerning the actions of an independent third party, and because such representations are not actionable under *Eureka Pipe*, *Frame* is of no assistance to Mr. Lyell's argument. Point II is denied.

Because, as a matter of law, Mr. Lyell had no right to rely on Mr. Shewmake's representations as to the future actions of a third party, there is no room for reasonable minds to differ as to the result of this case. In light of Mr. Lyell's failure to make a submissible case, NationsCredit is entitled to judgment as a matter of law. The trial court did not err in entering judgment notwithstanding the verdict in favor of NationsCredit. The judgment of the trial court is affirmed.

All concur.