

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

THE PUBLIC SCHOOL RETIREMENT )
SYSTEM OF MISSOURI, )
                    **Respondent,** )
v. )    **WD77443**
    )
SCOTT TAVEAU, )    **FILED: September 22, 2015**
                    **Appellant.** )

**Appeal from the Circuit Court of Cole County**
**The Honorable Daniel R. Green, Judge**

**Before Division Four: Alok Ahuja, C.J., Gary D. Witt, J. and Kathleen A. Forsyth, Sp. J.**

The Public School Retirement System of Missouri determined that Scott Taveau, former superintendent of the Liberty Public School District, had been paid retirement benefits for which he was ineligible, because he was employed on a full-time basis as the School District's Superintendent when the retirement benefits were paid. The Retirement System notified Taveau that it intended to withhold payment of his future retirement benefits, to recoup the payments he received when he was ineligible. Following a bench trial, the Circuit Court of Cole County agreed with the Retirement System's determination, and found that Taveau had been improperly paid retirement benefits to which he was not entitled. Taveau appeals. We affirm.

## Factual Background

Taveau served as Superintendent of the Liberty Public School District from July 1, 1999, until June 30, 2007.

In 2004, Taveau entered into an agreement with the School District to serve a three-year term as Superintendent, beginning July 1, 2004, and ending June 30, 2007. Under the agreement, Taveau had the option to "retire" from full-time employment on December 31, 2005. The contract stated that "[f]rom January 1, 2006 through June 30, 2006, the Superintendent, at his option, may perform his duties under Public School Retirement System regulations, including 16 C.S.R 10-5.010 and section 169.560 R.S.Mo., commonly referred to as the '550 hour rule', with no reduction in pay from the District." The "550 hour rule" permits a school district employee to retire from full-time employment, but continue to work for the school district on a part-time or temporary basis while receiving retirement benefits, so long as the retiree works no more than 550 hours in any school year, and receives no more than 50% of the annual compensation for the position he or she fills as a retiree. *See Pub. Sch. Ret. Sys. of Mo. v. Taveau*, 316 S.W.3d 338, 342 (Mo. App. W.D. 2010) ("*Taveau I*").

Taveau's agreement with the School District also provided that "the District shall make reasonable efforts to allow the Superintendent to continue his duties as Superintendent of Schools during the final year of this agreement[, *i.e.*, from July 1, 2006 through June 30, 2007,] pursuant to the terms of House Bill Nos. 346 and 174 and section 169.596 R.S.Mo., i.e. 'retire' and continue employment without losing his retirement benefit from the Public School Retirement System." At the time of the initial contract in 2004, § 169.596 RSMo Cum. Supp. 2003[1] permitted retired certificated teachers to continue to work for a school district while receiving retirement benefits for up to two years, if the school district met certain conditions and declared that it was experiencing "a critical shortage of certificated teachers." § 169.596.4(6), RSMo Cum. Supp. 2003. Taveau's 2004 agreement with the School District provided that he

---

[1] Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2013 Cumulative Supplement.

would advise the Board if he intended to exercise the option to continue his employment under the "critical shortage" statute. The agreement provided that "if by July 1, 2006, the Superintendent is unable to qualify for continued or re-employment with the District without loss of retirement benefit, the Superintendent shall withdraw his 'resignation' and both parties shall continue to be bound by the terms of this agreement."

In 2005, the Missouri General Assembly amended § 169.596.1, to specify that "no such retired certificated teacher shall be employed as a superintendent." S.B. 287, 2005 Mo Laws 1311, 1371. As a result of the 2005 statutory amendment, Taveau no longer had the option of working his final year as Superintendent as a retiree based on a "critical shortage" of candidates for the position. Following the 2005 statutory change, Taveau and the School District signed an "Addendum" to Taveau's contract. Under the Addendum, Taveau agreed that during the 2006-2007 school year, he would receive only half of his annual salary, and would continue to serve as Superintendent under the 550 hour rule. The Addendum also provided that, following the end of his term as Superintendent on June 30, 2007, Taveau would serve as a consultant for the District from July 1 to December 31, 2007. The Addendum provided that Taveau would receive approximately the other half of his salary, split into two payments, for his work as a consultant. Thus, under the Addendum, Taveau would receive an amount of compensation approximately equal to his full-time annual salary for the 2006-2007 school year, paid over eighteen months, while also receiving his full retirement benefits during that period.

In November 2005, Taveau notified the Retirement System of his impending "retirement" as of December 31, 2005, and the Retirement System subsequently began paying Taveau his retirement benefits. Taveau continued to work as the School District's Superintendent

until June 30, 2007. The School District also paid Taveau the consulting fees specified in the Addendum following the termination of his service as Superintendent.

In 2006, the Retirement System received information indicating that Taveau had continued to work full-time following his purported retirement on December 31, 2005. Over the next two years, the Retirement System sent Taveau and the School District a number of letters requesting a clarification of Taveau's working relationship with the District. After extensive correspondence, the Retirement System determined in July 2008 that Taveau was not, in fact, entitled to collect retirement benefits during the period from January 1, 2006 through June 30, 2007. Pursuant to this determination, the Retirement System withheld retirement benefit payments from July 2008 forward, to recover the sums improperly paid, along with eight percent interest. The total amount of the overpayment found by the Retirement System, exclusive of interest, was $ 212,471.46.

Natalie Shelton, a reporter with the Liberty Tribune newspaper, interviewed Taveau concerning his purported retirement. The results of Shelton's investigation were published under the headline "Retired or on the job?" During the interview, Shelton reported that she asked Taveau about his work schedule over the last two school years of his employment. Shelton quoted Taveau as saying, "[t]he first thing is that there's no such thing as a part-time superintendent. . . . I was 24/7. I worked 10-, 12-, 14-hour days. . . . That last year I was full time. I worked my tail off." Shelton also quoted Taveau as stating that, following the termination of his service as Superintendent, he was "not a consultant. It was the second part of my salary, pure and simple – duty owed. . . . Everyone understood it was not a consultant." Taveau was also quoted explaining that "[t]here's no impropriety here. . . . I worked a year and got a year's salary. If anyone wants to portray it differently, it's not true."

4

The School District hired an independent accounting firm, Westbrook and Co., to investigate alleged fraud and abuse in the District. With respect to the consulting arrangement called for by the Addendum, Westbrook and Co. concluded:

> [Based on a] review of payroll and vendor records[,] . . . the District paid a consulting fee of $90,764 to a past superintendent. The consulting agreement covered a period of time from July 1, 2007 through December 31, 2007. Based on review of records and interviews, we were unable to document any benefits received from this consulting agreement.

On August 1, 2008, the Retirement System filed a declaratory judgment petition against Taveau, seeking a declaration that he was not entitled to receive retirement benefits for the period from January 1, 2006 through June 30, 2007, and that the School District was required to make contributions to the Retirement System in connection with Taveau's continued full-time employment during that period. Taveau filed a counterclaim against the Retirement System and a third-party petition against certain Retirement System employees, alleging that the Retirement System's withholding of his retirement benefits to recoup payments previously made to him was unlawful. Ultimately, Taveau alleged claims for unjust enrichment, violation of due process under 42 U.S.C. § 1983, breach of contract, breach of fiduciary duty, and detrimental reliance. Taveau requested injunctive and mandamus relief, and monetary damages.

The circuit court granted summary judgment to the Retirement System on May 21, 2009. Taveau appealed, and we reversed. *Taveau I*, 316 S.W.3d 338.[2] Although we found that the Retirement System's summary judgment motion and supporting materials made a *prima facie* case that Taveau had not in fact retired on December 31, 2005, *id*. at 346*,* we concluded that Taveau had presented contrary evidence sufficient to create a genuine issue of material fact as to

---

[2]     The School District did not appeal the circuit court's grant of summary judgment against it, which found that the District was required to make contributions to the Retirement System with respect to Taveau's full-time employment from January 1, 2006, through June 30, 2007. The District complied with the 2009 judgment, and is not a party to this appeal.

whether he had effected a *bona fide* retirement. *Id.* at 347. Assuming that Taveau in fact retired on December 31, 2005, we held that a genuine issue of material fact also existed as to whether Taveau thereafter complied with the 550 hour rule, and – if he violated the rule – when that violation occurred, causing him to forfeit retirement benefits from that point forward. *Id.* at 348-56. We remanded the case to the circuit court for trial on the Retirement System's and Taveau's claims. *Id.* at 356.

On remand from this Court, the circuit court conducted a twelve-day bench trial. On March 18, 2014, the court entered a 34-page judgment which made detailed findings of fact and conclusions of law. The court found that "[t]he overwhelming evidence in the record is that Taveau did not actually retire from Liberty on December 31, 2005, and there is no credible evidence that Taveau did actually retire[] from Liberty at any point prior to June 30, 2007." Because he had not actually retired, the court concluded that Taveau was not entitled to receive retirement benefits from January 1, 2006 through June 30, 2007, and that the Retirement System was justified in recouping the benefits paid during that period. The court found against Taveau on his affirmative claims.

Taveau appeals.

**Standard of Review**

In a bench-tried case, "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

> In reviewing questions of fact, the reviewing court will defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested. . . . Once contested, a trial court is free to disbelieve any, all, or none of the evidence, and the appellate court's role is not to re-evaluate testimony through its own perspective. The trial court receives deference on factual issues because it is

6

in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.

*Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012) (citations and internal quotation marks omitted).

We review questions of law *de novo*. *Jennings v. Atkinson*, 456 S.W.3d 461, 464 (Mo. App. W.D. 2014).

## Analysis

As a general matter, "a prerequisite for a person to receive retirement benefits [from the Retirement System] is that person's actual retirement from the public school system." *Taveau I*, 316 S.W.3d at 342. "Section 169.560 provides a minor exception to this rule by allowing a retiree to maintain part-time employment with the public school system and receive retirement benefits." *Id.* Section 169.560 provides in relevant part:

> Any person retired and currently receiving a retirement allowance pursuant to sections 169.010 to 169.141, other than for disability, may be employed in any capacity in a district included in the retirement system created by those sections on either a part-time or temporary-substitute basis not to exceed a total of five hundred fifty hours in any one school year, and through such employment may earn up to fifty percent of the annual compensation payable under the employing district's salary schedule for the position or positions filled by the retiree, given such person's level of experience and education, without a discontinuance of the person's retirement allowance. If the employing school district does not utilize a salary schedule, or if the position in question is not subject to the employing district's salary schedule, a retiree employed in accordance with the provisions of this section may earn up to fifty percent of the annual compensation paid to the person or persons who last held such position or positions. . . . Such a person shall not contribute to the retirement system or to the public education employee retirement system established by sections 169.600 to 169.715 because of earnings during such period of employment. If such a person is employed in any capacity by such a district on a regular, full-time basis, the person shall not be eligible to receive the person's retirement allowance for any month during which the person is so employed and shall contribute to the retirement system.

7

*Taveau I* explained that a retiree must satisfy two separate criteria to be entitled to retirement benefits while continuing to be employed by a school district. <u>First</u>, "the person must, in fact, retire from full-time employment." 316 S.W.3d at 342. <u>Second</u>, the retiree must establish compliance with the 550 hour rule. "Even if the retiree has retired from full-time employment, the statute further requires that retiree (1) work no more than 550 hours, and (2) make no more than 50% of the salary at that position." *Id. Taveau I* made clear that the 550 hour rule does not come into play unless this first criteria – actual retirement from full-time employment – is satisfied: "Under the statute, there is no necessity to examine the number of hours worked by the retiree nor the amount of compensation received by the retiree unless the retiree does, in fact, retire from full-time employment." *Id.*[3] As reflected in our disposition of *Taveau I*, the question whether Taveau had complied with the requirements of § 169.560 was primarily a factual issue, which could only be resolved by trial.

## I.

Taveau first argues that the trial court "erred and misapplied the law" by concluding that he had not actually retired as of December 31, 2005. Taveau argues that "the question of

---

[3]        *Taveau I* found that there was a genuine issue of material fact whether Taveau had in fact retired as of December 31, 2005, and that this genuine factual dispute precluded the grant of summary judgment to the Retirement System. Because the "actual retirement" issue could not sustain the circuit court's grant of summary judgment, we also examined whether a genuine issue of material fact existed as to Taveau's compliance with the 550 hour rule. Our discussion of the 550 hour rule began by re-emphasizing that § 169.560 establishes two separate criteria: (1) actual retirement; <u>and</u> (2) compliance with the 550 hour rule:

> [T]he only reason we proceed to analyze the 550 hour and 50% compensation limitations of section 169.560 is because we have first concluded that there exists a material dispute as to the fact of whether or not Taveau did, in fact, retire from full-time employment with LPSD. Had we concluded that no material dispute existed on that issue and that the undisputed facts confirmed that Taveau had not retired from full-time employment, it would not be necessary to examine the 550 hour and 50% compensation limitations as examination of those issues only become relevant if the purported retiree has, in fact, retired from full-time employment.

316 S.W.3d at 348.

whether [he] retired on that date called for a legal conclusion." According to Taveau, the legal question of whether or not he retired on December 31, 2005, is answered by the terms of his employment contract with the School District. Taveau contends that, "[a]bsent an ambiguity, neither the trial court nor [the Retirement System] had the discretion to interpret or deviate from the terms of the contract between [Taveau] and [the School District]." In addition to the terms of the contract, Taveau cites the testimony of multiple School Board members, that they intended that Taveau would continue to work for the School District as a part-time retiree. Taveau also emphasizes that, beginning on January 1, 2006, the School District stopped making contributions to the Retirement System on his behalf, and identified Taveau's status on various accounting reports as "retired." Finally, Taveau refers to the fact that the Retirement System in fact paid retirement benefits to him throughout the period from January 1, 2006 through June 30, 2007.

Taveau's first Point misconceives the inquiry we directed the circuit court to conduct on remand. *Taveau I* makes clear that the issue of whether Taveau actually retired from full-time employment on December 31, 2005, was a *factual* question, not a legal issue, which the circuit court was required to resolve after considering all of the circumstances surrounding Taveau's post-December 2005 employment. If the terms of Taveau's contract with the School District were controlling, there would have been no need for *Taveau I* to remand the case to the circuit court for trial. Taveau cites no authority for the proposition that the characterization of an individual's employment status in an employment contract, to which the Retirement System was not a party, could excuse the individual from complying with the requirements of § 169.560, and we are aware of none. *Cf. Empson v. Mo. Hwy. & Transp. Comm'n*, 649 S.W.2d 517, 521 (Mo. App. W.D. 1983) ("the mere characterization of one party (in a contract) as an independent

9

contractor is not controlling of the question of agency [for purposes of vicarious tort liability] where surrounding facts evince an agency relationship, however artfully disguised").

In any event, Taveau's contract with the School District did not excuse him from complying with § 169.560. To the contrary, both the 2004 contract and the Addendum specified that Taveau would "perform his [post-December 31, 2005] duties under Public School Retirement System regulations, including . . . section 169.560 R.S.Mo." The testimony of School Board members cited by Taveau establishes nothing more than that they contemplated that he would continue as the Liberty School District's Superintendent within the limitations imposed by § 169.560. Thus, even under the contract, the factual question remains: did Taveau's post-December 31, 2005 employment comply with § 169.560? Based on a detailed review of the evidence presented during a twelve-day bench trial, the circuit court concluded that Taveau had failed to comply with § 169.560 in his post-December 31, 2005 employment. While Taveau's contract with the School District may have _permitted_ him to continue as Superintendent under the constraints of § 169.560, the circuit court found, as a matter of fact, that he had not done so. The trial court's factual findings do not constitute a "rewriting" or a "deviation" from the terms of his employment contract, as Taveau contends; instead, the circuit court simply found that he had failed to comply with those terms and the governing statute.

The fact that the School District designated Taveau as "retired" in its records, and stopped making Retirement System contributions on his behalf, is also not dispositive. Once again, Taveau cites no legal authority for the proposition that _the School District_'s characterization of his employment status could bind the Retirement System. In addition, the circuit court's 2009 summary judgment ruling determined that the School District _acted_

10

*erroneously* by characterizing Taveau as a retiree, and the School District has acquiesced in that judgment. *See* note 2, above.

The fact that the Retirement System initially paid Taveau retirement benefits for the period from January 1, 2006, through June 30, 2007, likewise does not justify reversal. As we explain in § III, below, Taveau has failed to develop any argument that the Retirement System lacks statutory authority to recoup retirement benefit payments which it previously paid in error. The Retirement System's initial (albeit erroneous) payment of benefits to Taveau is not dispositive.

Taveau's argument under his first Point also contends that, "[e]ven if one considers the trial court's finding that appellant did not retire in December 2005 to be a factual rather than a legal conclusion, such a determination is against the weight of the evidence." Taveau's Point Relied On does not make a "weight of the evidence" claim, and it is therefore not properly presented for our review. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 629-30 & n.10 (Mo. banc 2014). Even if a "weight of the evidence" argument were properly presented, Taveau's argument on this score merely references, again, the evidence discussed above: the terms of his contract with the School District; the testimony of School Board members that they desired Taveau to continue his employment as Superintendent under the limitations of § 169.560; the fact that the School District characterized him as "retired"; and the fact that the Retirement System actually paid him retirement benefits. We have explained above why none of these facts mandate a decision in Taveau's favor.

Taveau's "weight of the evidence" claim fails to acknowledge the evidence on which the circuit court relied to find that he had not actually retired in December 2005. Given the nature of Taveau's argument, we find it unnecessary to review all of the evidence adduced during the

11

twelve-day bench trial, or all of the findings made by the circuit court in its 34-page judgment. We merely summarize some of the factual findings made by the circuit court which support its decision.[4]

First and foremost, the trial court's judgment found that Taveau had in fact made the statements attributed to him by reporter Natalie Shelton. Those statements, quoted above, admit that Taveau continued to work full-time following his purported resignation, and that the "consulting fees" he received after the conclusion of the 2006-2007 school year were merely the second half of his compensation for his full-time employment as Superintendent during that school year. Taveau's admissions in his interview with Shelton, standing alone, are sufficient to support the judgment.

The circuit court also found that a time log prepared by Taveau, which purportedly demonstrated his compliance with the strictures of § 169.560, was "inaccurate, incomplete, self-serving, and by his own testimony a[n] attempt to create a 'fictitious' record." The court specifically noted that the log did not "include time Taveau worked for Liberty when he was not in his office even though it was very common for Taveau to work outside his office by attending conferences, meetings, using his Liberty laptop and by telephone." Taveau's log reported 512 hours worked during the 2006-2007 school year. The trial court specifically found that the log failed to record time on 60 days when the evidence indicated that Taveau was either present in the School District's central office, or attending education conferences. The trial also found that the log "did not include any hours worked for Liberty when Taveau worked outside the office by

---

[4] Taveau's Brief argues that the circuit court improperly "deferred to [the Retirement System's] after the fact determination that [Taveau] had not retired." This claim is frivolous. The circuit court heard evidence for twelve days, and made detailed findings of fact to support *its* conclusion that Taveau had not retired in December 2005. There is no indication in the judgment that the circuit court deferred to the Retirement System's decision, as opposed to making its own independent factual determinations based on the evidence presented at trial.

12

making telephone calls to Liberty employees, reading and sending e-mail from his Liberty e-mail address and attending business meetings where he charged expenses to his Liberty credit card."

The judgment notes that the calendar maintained by Taveau's secretary showed that he was in the office on 76 weekdays during the period from January 1, 2006 to June 30, 2006, and on 151 weekdays during the 2006-2007 school year. The trial court also found that Taveau attended education conferences on at least 22 additional days, and "commonly worked outside of the office." In addition, Taveau "sent numerous [work-related] e-mails," and "made numerous [work-related] telephone calls," on days he claimed to not have worked.

The circuit court also found that the consulting fee required by the Addendum was a sham. The court found that "Taveau did not do any work as a consultant to his successor as superintendent," and that "[t]here is no evidence that Taveau performed any work for Liberty after June 30, 2007." The court found that "Taveau wanted this 'consultant fee' included in his compensation so that he would receive the same amount of compensation for the 2006-07 school year that he was going to earn under the Employment Agreement, while characterizing part of that compensation as a 'consultant fee' rather than salary." The circuit court also relied on the conclusion of the School District's accountants, Westbrook & Co., that "Taveau did not do any work in return for that [consultant] fee."

The School District's public statements treated June 30, 2007 – _not_ December 31, 2005 – as Taveau's retirement date. The School District's newsletter referred to the Addendum as "extending the superintendent's employment through the 2006-2007 school year." The minutes of the School Board did not indicate that Taveau resigned at any time before June 30, 2007, and Taveau did not provide a resignation letter effective December 31, 2005, although requested to

13

do so.[5] Inconsistent with a purported December 2005 retirement, the School District's July 2006 newsletter reported that Taveau "announced he will retire effective June 30, 2007, at the regular business meeting of the Liberty Board of Education held July 24, 2006," after "hav[ing] served eight years as Liberty's Superintendent of Schools."

Although Taveau offered testimony which contradicted (or offered a benign explanation for) the evidence described above, the court explicitly found Taveau's testimony to be "not credible." In a bench tried case such as this, "the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony. We defer to the trial court on credibility determinations even if the evidence could support a different conclusion." *Exch. Bank of Mo. v. Gerlt*, 367 S.W.3d 132, 136 (Mo. App. W.D. 2012) (citations and internal quotation marks omitted).

For all of these reasons, we reject Taveau's first Point. The circuit court properly applied the law, and was supported by substantial competent evidence, in concluding that Taveau had not retired from full-time employment with the School District until June 30, 2007, and was therefore not entitled to receive retirement benefits until that time. We note that *Taveau I* found that the Retirement System's summary judgment briefing had made a *prima facie* case that Taveau had not resigned as of December 31, 2005, based on the presentation of evidence similar to that which the Retirement System introduced at trial. 316 S.W.3d at 346.

Taveau's second, third and fourth Points all challenge the circuit court's additional conclusion that Taveau had not complied with the 550 hour rule in his employment after

---

[5] Taveau argues that the circuit court "impose[d] yet another term into the agreement" by finding that he was required to submit a resignation letter in order to retire effective December 31, 2005. The trial court imposed no such requirement; instead, it simply found that the absence of a resignation letter was additional evidence that Taveau did not, in fact, retire when he claimed he did. Although such letters may not have been required, Carol Embree, Chief Financial Officer for the School District, testified that an official resignation letter "would be what typically would happen with regard to people changing their employment status."

14

December 31, 2005, assuming that he had actually retired on that date. Given the finding that Taveau did not actually retire in December 2005, it is unnecessary to address his compliance with the 550 hour rule for reasons explained above.

## II.

In his fifth Point, Taveau contends that his right to due process of law was violated, because his retirement benefits were taken without affording him a pre-deprivation hearing. Taveau claims that "[u]nless a pre-deprivation hearing is truly burdensome in proportion to the liberty or property interest at stake, or the state is truly unable to anticipate and prevent a random deprivation of the property, pre-deprivation notice and a hearing are required before an individual may be deprived of his property."

> The due process clauses of the United States and Missouri constitutions prohibit the taking of life, liberty or property without due process of law. . . . In determining what process is due in a particular case, a court first determines whether the plaintiff has been deprived of a constitutionally protected liberty or property interest. If so, a court then examines whether the procedures attendant upon the deprivation of that interest were constitutionally sufficient.
>
> Under both the federal and state constitutions, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. This does not mean that the same type of process is required in every instance; rather, due process is flexible and calls for such procedural protections as the particular situation demands. Three factors must be considered in determining what procedures are constitutionally sufficient:
>
> > [1] First, the private interest that will be affected by the official action; [2] second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Jamison v. State Dept. of Soc. Servs.*, 218 S.W.3d 399, 405 (Mo. banc 2007) (citations, footnote, and internal quotation marks omitted).

15

Although the Retirement System disputes whether Taveau had a protected property interest in the receipt of retirement benefits to which he was not statutorily entitled, we assume for purposes of our analysis that Taveau had a property interest protected by due process safeguards. We must then examine "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."

Taveau's briefing assumes that a "pre-deprivation hearing" must be conducted in-person, and that *no* pre-deprivation hearing was provided to him in this case. Taveau's assumption is inaccurate. Procedures "which inform[] [an] employee of the claims against him and [offer] a chance to tell his side of the story[,]" and which give an agency "an opportunity to halt the suspension if further investigation were needed[,]" have been found to "substantially alleviate[] the risk of an erroneous deprivation[.]" *State ex rel. Donelon v. Div. of Emp't Sec.*, 971 S.W.2d 869, 876 (Mo. App. W.D. 1998). In *Laubinger v. Laubinger*, 5 S.W.3d 166 (Mo. App. W.D. 1999), we specifically held that the opportunity to present a party's position *in writing* prior to the circuit court's entry of an order mandating the payment of child support *pendente lite* ("*PDL*"), was sufficient to satisfy due process principles, where the decision was subject to further review in connection with the final disposition of a dissolution action. We explained:

> [The] pre-deprivation opportunity to be heard does not have to be a formal judicial hearing. Pre-deprivation procedures, when coupled with adequate post-deprivation remedies, are sufficient where they provide an initial check against mistaken decisions. Here, both the appellant and the respondent were allowed to file suggestions in support of or in opposition to the respondent's application for *PDL* orders, affidavits, and various court-approved forms providing extensive financial information concerning the relevant issues in determining temporary child support, attorney's fees and costs. Given the extensive nature of the information the parties submitted, the risk of erroneous deprivation here was very small.
>
> . . . The opportunity to present reasons, either in person *or in writing*, why a proposed action should not be taken is sufficient to satisfy due process.

16

*Id.* at 176 (citations and internal quotation marks omitted).

Here, the Retirement System sent several letters to Taveau and to the School District, over a roughly two-year period, that explained the Retirement System's concerns regarding Taveau's December 2005 "retirement," and requested specific information to address those concerns. The letters offered several opportunities for Taveau and the School District to respond, and commented extensively on the responses the Retirement System received.

Given the multiple opportunities the Retirement System gave to Taveau to explain his position and offer evidence in writing, his claim that he was denied a pre-deprivation hearing is simply inaccurate.[6] Taveau does not separately argue that the pre-deprivation opportunity to be heard which the Retirement System gave him was constitutionally inadequate. We therefore do not decide whether the extensive exchange of correspondence discussed above, and the availability of prompt post-deprivation review, was sufficient to satisfy due-process requirements. We merely hold that – contrary to Taveau's argument – he was in fact provided

---

[6] We also note that significant post-deprivation procedures were available to Taveau under 16 CSR 10-1.050. The rule provides that, once a request for review is made, "review will be held at the next regularly scheduled board meeting that is at least thirty (30) days after the request for review is received." 16 CSR 10-1.050(3). Decisions on such appeals will "[n]ormally . . . occur at the same meeting as the request is initially presented to the board[.]" 16 CSR 10-1.050(8). If the board is unable to make a decision at the meeting at which the request for review is presented, "[i]n those instances, the board will make its decision at the next regularly scheduled board meeting." 16 CSR 10-1.050(8).

Although Taveau argues that he was not required to take advantage of the opportunity for post-deprivation review, the availability of those procedures would be relevant to Taveau's due process claim.

> [P]re-deprivation process must simply provide an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. Specifically . . . where a prompt post-deprivation evidentiary hearing is available, due process requires only that the employee be afforded notice of the charges, an explanation of the employer's evidence, and an opportunity to present his or her side of the story prior to the deprivation.

*Belton v. Bd. of Police Com'rs of Kansas City*, 708 S.W.2d 131, 138 (Mo. banc 1986) (citation omitted).

17

with an opportunity to be heard prior to the deprivation of his property interests, and his due process argument accordingly fails.

### III.

Taveau's sixth Point claims that he detrimentally relied upon the Retirement System's representations that he had complied with the eligibility requirements for payment of retirement benefits, and should not be punished for his reliance on the Retirement System's statements. "[T]he 'doctrine of equitable estoppel is rarely applied in cases involving a governmental entity, and then only to avoid manifest injustice.'" *Lalani v. Dir. of Revenue*, 452 S.W.3d 147, 149 (Mo. banc 2014) (citation omitted). Given the trial court's findings that Taveau continued his full-time employment despite informing the Retirement System that he had retired and was only performing the limited work permitted by § 169.560, no manifest injustice resulted here.

Claims based on detrimental reliance also require that reliance on the actions or statements of another be justifiable. *See Wellcraft Marine v. Lyell*, 960 S.W.2d 542, 547 (Mo. App. W.D. 1998). As explained above, while there is no dispute that Taveau notified the necessary parties of his purported retirement, the circuit court found that he did not, in fact, retire. The Retirement System, acting in good faith on Taveau's representations, paid retirement benefits accordingly. Given that Taveau was aware of the actual nature of his continued employment, he could not have justifiably relied on the Retirement System's statements or actions, which rested on the assumption that he was complying with § 169.560. We also note that it is the recognized public policy of Missouri that individuals should not be allowed to benefit from their own wrongdoing. *See, e.g., James v. Paul*, 49 S.W.3d 678, 688 (Mo. banc 2001); *Carr v. Holt*, 134 S.W.3d 647, 651 (Mo. App. E.D. 2004). We reject Taveau's detrimental reliance claim.

18

Taveau also claims the Retirement System had a fiduciary duty to provide retirement benefits to him, and that it had no statutory power to withhold those funds. We fail to see how the Retirement System could have a fiduciary duty to make retirement benefits payments to individuals who do not satisfy the statutory criteria for receipt of those benefits. Moreover, although Taveau's briefing makes the assertion that the Retirement System lacks the statutory authority to withhold future benefit payments to recoup benefits previously paid in error, he does not cite any authority to support this argument. Although the issue was not then ripe for consideration, *Taveau I* observed "that section 169.080 RSMo 2000 would appear to be instructive on the issue of correcting overpayments made to retirees under the subject retirement system, should the trial of this case result in a determination that Taveau received more retirement benefits than he was entitled to receive." 316 S.W.3d at 356 n.6. Despite this statement in our prior opinion, Taveau's briefing does not cite § 169.080, much less make any argument as to why the statute would be inapplicable here. Section 169.080 provides that,

> [s]hould any change or error in records result in any member or beneficiary receiving from the retirement system more or less than he would have been entitled to receive had the records been correct, the board of trustees shall have the power to correct such error and, as far as practicable, may adjust the payments in such manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid.

In the absence of any contrary argument from Taveau, we hold that § 169.080 authorized the Retirement System to recover funds previously paid to Taveau in error, through the adjustment of his future benefit payments.

Given that the Retirement System had the statutory authority to withhold his future benefit payments, Taveau's claim that the Retirement System was unjustly enriched by such withholding likewise fails. "To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant

19

appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010). Here, there was no inequitable or unjust retention.

Point VI is denied.

## IV.

In his final Point, Taveau claims that the circuit court erroneously considered evidence of a dismissed criminal indictment against him, and his later guilty plea which resulted in a suspended imposition of sentence.

As background, it appears that Taveau was initially charged, by indictment, with stealing by deceit in connection with his receipt of retirement benefits during the period at issue in this case. That charge was not prosecuted to a conclusion. Instead, Taveau later pled guilty to the misdemeanor of engaging in a deceptive business practice, associated with his use of a School District credit card. The parties dispute whether the original indictment was amended to charge a deceptive business practice, or instead whether the original indictment was dismissed, and a new charge filed.

In its judgment, the circuit court specifically referred to the indictment and Taveau's later guilty plea. It explained:

> The Court finds this evidence relevant to Taveau's claims under 42 U.S.C. § 1983. The evidence against Taveau in his criminal case was similar to the evidence that caused [the Retirement System] to conclude that Taveau was not entitled to retirement benefits and that it had a statutory duty to withhold Taveau's benefits. Taveau's guilty plea tends to prove that [the Retirement System]'s decision to withhold his retirement benefits was not arbitrary and capricious.

There are at least two problems with Taveau's argument, even if we assume that the evidence of his criminal prosecution and guilty plea was inadmissible. First, when the Retirement System initially sought to introduce evidence concerning the criminal charges

20

Taveau objected, and the trial court *sustained* his objection. Evidence concerning the criminal charges was first admitted into evidence during Taveau's direct examination *by his own counsel*; the Retirement System's counsel then cross-examined Taveau concerning the charges without objection. "A party may not complain on appeal that the trial court erred in admitting evidence if the complaining party was the first to admit evidence of that type." *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 125 (Mo. banc 2013). We recognize that Taveau may have introduced this evidence to clarify the nature and disposition of the criminal charges, because the charges were discussed with the circuit court when the Retirement System sought (unsuccessfully) to introduce evidence of those charges. But the fact remains that it was Taveau who actually introduced the criminal charges into evidence. "A party who has introduced evidence concerning a certain fact may not on appeal complain that his opponent was allowed to introduce related evidence, in rebuttal or explanation." *Bowls v. Scarborough*, 950 S.W.2d 691, 702 (Mo. App. W.D. 1997) (where party's motion *in limine* to exclude evidence is denied, the party must "await an attempt by [the adverse party] to introduce [the challenged] evidence . . . and object at that time"; by preemptively introducing the evidence, appellant waived any objection).

In addition, the judgment states that evidence of the criminal charges was relevant only for a limited purpose. According to the judgment, this evidence "tends to prove that [the Retirement System]'s decision to withhold his retirement benefits was not arbitrary and capricious," and the evidence was therefore relevant to Taveau's claims under 42 U.S.C. § 1983. We presume from this statement that the trial court considered the evidence relevant to a substantive due process claim, where the rationality or irrationality of the Retirement System's actions might be in issue. *See Peer v. Mo. Bd. of Pharmacy*, 453 S.W.3d 798, 811 (Mo. App.

21

W.D. 2014); *Indep. Living Ctr. of Mid MO, Inc. v. Dep't of Social Servs.*, 391 S.W.3d 52, 58-59 (Mo. App. W.D. 2013). The trial court actually found – after hearing twelve days of testimony – that Taveau had not been eligible to receive the retirement benefits paid to him; this determination did not rely on evidence of the criminal charges.[7] The Retirement System's denial of Taveau's retirement benefits could not be irrational where its decision was legally justified and correct. Thus, the criminal charges added nothing of consequence, and Taveau could not have been prejudiced by the trial court's consideration of that evidence in relation to his due process claim.

## Conclusion

The circuit court's judgment is affirmed.

_____
Alok Ahuja, Chief Judge

All concur.

---

[7] We presume in a bench trial that a trial court did not rely on challenged evidence unless the record clearly indicates otherwise. *See*, *e.g.*, *State v. McMillon*, 436 S.W.3d 663, 671 (Mo. App. E.D. 2014). Consistent with that principle, we presume in this case that the trial court relied on evidence of the criminal charges solely for the limited purpose identified in the judgment.